NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY v. SUN INSURANCE OFFICE and Another.

SAME v. AGRICULTURAL INSURANCE COMPANY OF WATERTOWN and Another.[1]

December 20, 1901.

Nos. 12,725—(119).

## N. W. M. Life Ins. Co. v. Rochester G. Ins. Co. Followed.

In an action to determine the question of total loss in case of damage to a building by fire, the rule adopted in N. W. Mut. Life Ins. Co. v. Rochester German Ins. Co., is accepted and applied.

## Total Loss—Evidence of Value of Undestroyed Portion,

In applying such test it was proper to receive evidence of the value of the remaining parts of the building, the cost of repairing the same, and the total cost of reconstruction.

## View of Premises—Charge to Jury.

It was not error to direct the jury to view the premises under consideration, as no substantial change appeared to have taken place at the time of the trial; but it was error to instruct the jury that in determining the question of total loss they might consider the knowledge gained thereby.

Separate actions in the district court for Ramsey county to recover upon their respective policies of fire insurance, from defendant Sun Insurance Office $2,500 and interest, and from defendant Agricultural Insurance Company of Watertown, New York, $1,500 and interest. The cases, which involve the same issues, were by consent tried together before Jaggard, J., and a jury, which ren-

[1] Reported in 88 N. W. 272.

85 M.—5

dered separate verdicts in favor of plaintiff against defendants for the respective sums demanded. From separate orders denying their respective motions for judgment notwithstanding the verdict or for a new trial, defendants severally appealed. Order denying new trial reversed.

*Countryman & Morrison*, for appellants.

*Durment & Moore*, for respondent.

LEWIS, J.

The principal question involved in this case has been considered and determined in N. W. Mut. Life Ins. Co. v. Rochester German Ins. Co., supra, page 48. The policies cover the same building, the same issues were presented in the pleadings, and the court submitted the question of total loss to the jury upon the same theory. The decision in the former case therefore controls this action. Certain evidence, however, as to the value of materials in the walls and the cost of rebuilding, was offered by the insured for the bearing it might have upon the question of total loss, and, as those particular questions were not presented in the other case, it will be necessary to give them attention here.

The court properly rejected the evidence in reference to the value of the brick after they had been taken from the wall, cleaned, and made ready for use again. We need not repeat what was said in the other case, that the insurance was upon the building, and not upon the materials composing it; hence it was of no importance what the brick might be worth after renovation and preparation for rebuilding. They do not remain a part of the building if taken from the walls, and in the process of their removal the building is to that extent completely destroyed.

For the purpose of applying the test laid down in the former case, it was proper to show the value of the walls remaining, in place, as compared with the total cost of rebuilding, and the cost of repairing the walls suitable for that purpose; and for the purpose of showing the value of such walls, in place, after repair, it was competent to show what the cost of erecting new walls would be. The question for the jury to determine was, as of the date of the fire, what a prudent owner, desiring to rebuild, would do under

the circumstances,—would he reconstruct, using the walls remaining, in place, or would he build anew from the foundation?

The question of total loss was clearly one for the jury to determine, under proper instructions, that fact not appearing conclusive from the evidence.

During the course of the trial, against appellant's objection, the court directed that the jury view the premises, instructing them as follows:

"You will go in the custody of the deputy sheriff to view the premises involved in this action. You will be careful then and at all times not to talk about this case to anyone, nor allow anyone to say anything whatever about it to any of you, nor in your presence. The court charges you that you go there, to view the premises, inside and out, but not to perform experiments,—anything more than you would learn from a careful scrutiny of the building with your eyes—the building and the remains."

The jury, under the care of an officer, viewed the premises, and in the course of the court's instructions the following statement was made:

"You are to determine whether or not it is a total loss, whether it has lost its identity as a building, whether it has lost its specific character as a building, in the light of all the testimony that has been received by the court in this case and in the light of the knowledge which you acquired by a view of the premises."

Also:

"It is proper, as I said, gentlemen, for you to consider the knowledge you gained from a view of the premises."

And again:

"In this connection the court charges you that you should try this case on what testimony has been produced before you, and from the knowledge that you have derived from a view, and not from any preconception of this case."

This fire occurred in July, 1900, and the cause came on for trial in April, 1901, at which time the jury viewed the premises. We cannot say that it was error for the court to direct the jury to take the view. While true that the question of total loss must be

determined as of the date of the fire, and the condition of the building considered and examined as it was at that time, still, if in the meantime there were substantially no changes in the building by its exposure to the elements, we can see no reason why a jury might not profitably examine the premises for the purpose of applying the evidence produced at the trial.

But the court was in error in instructing the jury that in determining whether or not there was a total loss they might take into consideration the knowledge gained and derived from a view of the remnants. It is the law of this state that a view of the jury is ordered, not for the purpose of furnishing evidence, but for the purpose of enabling the jury to better understand and apply the evidence given in court. Chute v. State, 19 Minn. 230 (271); Brakken v. Minneapolis & St. L. Ry. Co., 29 Minn. 41, 11 N. W. 124.

In the case of Schultz v. Bower, 57 Minn. 493, 59 N. W. 631, it was expressly held error for the trial court to instruct the jury that they might use as evidence what they saw or learned upon a view of the premises. While the learned trial court may not have intended to convey to the jury the idea that they were to make personal examination of the premises for the purpose of deriving original information to be used as evidence, yet the language employed is susceptible of such construction. It was almost equivalent to stating to them that they should determine, not only from the evidence produced at the trial, but from their examination of the premises, whether or not there was a total loss. They should have been expressly instructed that the view was permitted for the sole purpose of applying and understanding the evidence produced at the trial. For this error, and for the reason that the court applied the wrong test with reference to total loss, a new trial must be granted.

The orders of the court denying appellants' motions for judgment notwithstanding the verdict are affirmed, and the orders denying appellants' motion for a new trial are reversed, and new trials granted.