STATE *ex rel.* JAMES HART *et al. vs.* COMMON COUNCIL OF CITY OF DULUTH *et al.*

Argued April 25, 1893.   Decided May 9, 1893.

### Removal from Municipal Office Reviewable on Certiorari.

Where the power of a municipal body to remove from office is not discretionary, but only for cause, after notice and hearing, the proceedings are judicial in their nature, and may be reviewed on certiorari.

### Review of Common Council Proceedings, Limited.

On such review the court will inspect the record to see whether the body had jurisdiction, and kept within it, and whether the charges preferred were sufficient in law, and will examine the evidence, not for the purpose of weighing it, but to ascertain whether it furnished any legal and substantial basis for the removal.

### Same—Their Proceedings, How Tested.

Such bodies being essentially legislative and administrative, their proceedings, even when judicial in their nature, are not to be tested by the strict legal rules which prevail in courts of law. If they keep within their jurisdiction, and the evidence furnishes a legal and substantial basis for their decision, it will not be disturbed for mere informalities or irregularities which might amount to reversible error in the proceedings of a court.

### "Sufficient Cause" for Removal Defined.

"Sufficient cause" means "legal cause," and must be one that specially relates to and affects the administration of the office,—one touching the qualifications of the officer, or his performance of its duties.

### Charges, How to be Stated.

While the charges need not be stated with the formal exactness required in pleadings in courts, yet they should contain a specification of facts constituting a cause for removal, with reasonable precision, sufficient to inform the incumbent of the particular grounds upon which the charges are based.

### Same—Their Sufficiency is a Question of Law.

The sufficiency and reasonableness of the charges are questions of law for the court.

### Duluth Charter Construed.

The city charter of Duluth vests the power of removing the fire commissioners from office exclusively in the common council, and a resolu-

tion of that body preferring charges against such commissioners, and fixing a time and place of hearing, is not one which requires the approval of the mayor.

**Charges Held Insufficient.**

The charges in the case considered, and *held* insufficient.

*Certiorari* issued February 20, 1893, by this court on the relation of James Hart, Jr., and Theodore M. Helinski to the Common Council of the City of Duluth and Frank Burke, Jr., City Clerk, to certify and return to this court the record and proceedings, on the removal of relators from the office of Fire Commissioners under Sp. Laws 1887, ch. 2, subch. 11, § 4. The respondents made return April 3, 1893, setting forth a copy of the charges against the relators, and of the proceedings of the Common Council thereon, together with a copy of all the evidence (taken by a shorthand reporter) given upon the hearing before the Council.

*B. C. Rude* and *A. L. Thurman*, for relators.

The charges in this case were of the most general, uncertain and indefinite character. Not a single act or omission of these relators was specified with sufficient particularity to enable them to know, for what particular act they were to be tried. When an officer can be removed only for cause after a hearing, the charges must specify time, place and person, or give other particulars so as to enable the accused fully to know the particular acts or omissions of duty of which he is accused. *People ex rel.* v. *Therrien,* 80 Mich. 187; *People ex rel.* v. *Fire Commissioners,* 72 N. Y. 446; *State* v. *McGarry,* 21 Wis. 496; *People ex rel.* v. *Nichols,* 79 N. Y. 582; *State ex rel.* v. *Chamber of Commerce,* 20 Wis. 63; *Meech* v. *Lee,* 82 Mich. 274; *Field* v. *Commonwealth,* 32 Pa. St. 478; *State ex rel.* v. *Smith,* 35 Neb. 13.

*Certiorari* is the remedy in such cases where, the alleged vacancy not having been filled, *quo warranto* or *mandamus* will not lie. The writ of *certiorari* was held applicable in cases identical with the one at bar, in *State* v. *Pritchard,* 36 N. J. Law, 101; *Dullam* v. *Willson,* 53 Mich. 392; *People* v. *Myers,* 57 Hun, 587, 58 Hun, 604; *State* v. *Mayor, etc., of Millville,* 53 N. J. Law, 362; *State* v. *Board of Police Com'rs,* 49 N. J. Law, 170; *Andrews* v. *King,* 77 Me. 224.

*J. D. Holmes,* for respondents.

By Sp. Laws 1887, ch. 2, subch. 8, § 4, and subch. 11, § 4, the Legislature vested the power of removal of city officials, in the Common Council. When investigating charges against a city official with a view to removal from office, the Common Council do not act as a judicial body, nor do they act, or attempt to act, in a judicial capacity. Nor are their acts judicial in their nature. Neither does their action in these matters partake of the nature of a criminal trial or procedure, nor are they acting in any sense as a court of impeachment, or bound by rules governing such courts or bodies. The whole matter, manner of procedure, conduct of the investigation and final action vests solely in the sound discretion of the body. They have power to remove for "sufficient cause." What constitutes sufficient cause is a matter of fact to be determined by the body after investigation.

The courts of this country are not agreed as to whether the power of removal from office for official misconduct, is judicial in its nature or administrative, but we submit, that under the provisions of the Constitution and the City Charter the acts and proceedings of the Common Council in removing relators from office were administrative and not judicial. *State* v. *Doherty,* 25 La. Ann. 119; *Patton* v. *Vaughan,* 39 Ark. 211; *State* v. *Oleson,* 15 Neb. 247; *State* v. *Hawkins,* 44 Ohio St. 98; *People* v. *District Court,* 6 Colo. 434; *Donahue* v. *County of Will,* 100 Ill. 94; *Keenan* v. *Perry,* 24 Texas, 253; *State* v. *Frazier,* 48 Ga. 137.

It is now the settled law of this State that legislative, ministerial or administrative acts of a municipal corporation will not be reviewed on *certiorari.* *In re Wilson,* 32 Minn. 145; *Lemont* v. *County of Dodge,* 39 Minn. 385; *Christlieb* v. *County of Hennepin,* 41 Minn. 142; *State* v. *Mayor of St. Paul,* 34 Minn. 250; *Moede* v. *County of Stearns,* 43 Minn. 312.

There is no force in the objection that the resolution passed January 18, 1893, directing notice to be given to relators, had not on January 19, 1893, when the service was made, any force or effect, as the same had not then been signed by the Mayor. It did not require the signature of the Mayor to give it effect and validity. Sp. Laws 1887, ch. 2, subch. 3, § 1; subch. 8, § 4; subch. 11, § 4.

The power of removal from office being vested solely in the Common Council, the Mayor has no power over, or control of, any of their proceedings, when they are acting in the capacity of a board or body in investigating charges against a city official with a view of removal from office, if the charges are sustained.

It is not requisite that the charges should be drawn with the formal exactness of pleadings in a court of justice, nor is it necessary that the proceedings should be conducted with the degree of exactness which is required upon a trial for criminal offenses in an ordinary court of justice. *People ex rel.* v. *Thompson,* 94 N. Y. 451; 1 Dillon, Mun. Corp. (3d Ed.) § 255; *People ex rel.* v. *Board of Police Com'rs,* 93 N. Y. 97.

The charges were sufficient in law to sustain the removal. They might have been drawn with more precision, and made more specific, but they are sufficient to meet the requirements of the statute. *Wilcox* v. *People ex rel.,* 90 Ill. 186; *People* v. *Higgins,* 15 Ill. 110; *State* v. *Doherty,* 25 La. An. 119; *Patton* v. *Vaughan,* 39 Ark. 211; *People ex rel.* v. *Stout,* 19 How. Pr. 171; *State* v. *McGarry,* 21 Wis. 496.

MITCHELL, J. By the charter of the city of Duluth, all powers and duties connected with, and incident to, the government and discipline of the fire department of the city are vested in three commissioners, called the "Board of Fire Commissioners," who have entire control of the department, including the appointment and discharge of all employes connected with it, and making their own rules and regulations for the government of the same. These commissioners are, "on nomination of the mayor," "appointed by the common council," and hold their office for the term of three years. The charter provides that:

"Any member of said board may at any time be removed by a vote of two thirds of all the members elect of the common council of said city for *sufficient cause:* * * * *provided,* that the said common council shall previously cause a copy of the charges preferred against such member sought to be removed, and notice of the time and place of hearing the same, to be served on him at least ten days previous to the day so assigned, and opportunity be given him to make his defense personally or by counsel."

v.53M.—16

It is here sought, by *certiorari*, to review the proceedings of the common council in assuming to remove the relators from the office of fire commissioners.

1. It is urged by respondents that the power of removal from office conferred on the common council is purely administrative and *quasi* political, and therefore that their proceedings cannot be reviewed on *certiorari*.

That this power may not be "judicial," in the sense that it can only be conferred upon the courts, in whom all judicial power is vested under the constitution, has nothing to do with the question; for there is nothing now better settled than that *certiorari* will lie to review the *quasi* judicial acts and proceedings of municipal officers and bodies. Neither is there anything better settled than that while the incumbent has no vested right of property, as against the state, in a public office, yet his right to it has always been recognized by the courts as a privilege entitled to the protection of the law, and that proceedings, in all cases where the amotion from office is for cause, upon notice and hearing, are adversary and judicial in their nature, and may be reviewed on *certiorari*. We think there is practically no conflict in the authorities on this point, the only difference among them being merely as to what they will review on such a writ. Some courts, restricting the writ to its original common-law office, hold that it brings up for review only the record, and not the evidence, and hence that they will not look into the evidence at all, but merely inspect the record, to see whether the inferior tribunal had jurisdiction, and had not exceeded it, and had proceeded according to law, or, as expressed in one case, whether the tribunal "had kept within its jurisdiction, or whether the cause assigned was a cause for removal under the statute." Other courts hold that the evidence may be brought up, not for the purpose of weighing it, to ascertain the preponderance, but merely to ascertain whether there was any evidence at all to sustain the decision of the inferior tribunal,—whether it furnished any legal and substantial basis for the decision. The latter is the doctrine of this court as to the office of the writ of *certiorari*. But, while this is so, we recognize the prime importance of each department of government avoiding anything like improper inter-

ference with the others in the discharge of their functions; also, that while city councils and other municipal bodies may not have the power to remove from office except for cause, yet, this power being designed to insure efficiency and fidelity in the discharge of official duty, the degree of incompetency or inefficiency which amounts to sufficient cause for removal must of necessity, within certain established limits, rest somewhat in the sound discretion of the officer or body in whom the power of removal is vested. We also recognize the fact that while in the exercise of this power their proceedings are *quasi* judicial, and hence reviewable by the courts, yet they are not courts, but essentially legislative and administrative bodies; and that their action should be considered in view of their nature and the purposes for which they were organized, and not tested by the strict legal rules which prevail in trials in courts of law. Hence, if such a body has kept within its jurisdiction, and the evidence furnished any legal and substantial basis for their action, it ought not to be disturbed for any mere informalities or irregularities which might have amounted to reversible error in the proceedings of a court. To apply any other rule to the proceedings of such bodies would be impracticable, and disastrous in the extreme to public interests.

2. The first contention of relators is that the common council never acquired jurisdiction, because the notice of hearing and the copy of the charges were not served on them as required by the charter. The particular objection is that, when the service was made on them, the resolution of the common council preferring these charges against them had neither been approved by the mayor, nor passed over his veto, as required by the city charter. Sp. Laws 1887, ch. 2, subch. 3, § 1. There is no merit in this point. Under the charter the power of removal from office is vested *solely* in the common council, and the mayor has no power over, or control of, their proceedings in presenting or investigating charges against a city official with a view to removal from office. Their action in preferring charges against relators was not such an ordinance or resolution as comes within the purview of subch. 3, § 1, and did not require the approval of the mayor before it took effect.

3. The next question is whether the charges presented were sufficient in law to constitute a cause for removal,—whether they were sufficient in form and substance to authorize the common council to proceed.   "Cause," or "sufficient cause," means "legal cause," and not any cause which the council may think sufficient.   The cause must be one which specially relates to and affects the administration of the office, and must be restricted to something of a substantial nature directly affecting the rights and interests of the public. The cause must be one touching the qualifications of the officer or his performance of its duties, showing that he is not a fit or proper person to hold the office.   An attempt to remove an officer for any cause not affecting his competency or fitness would be an excess of power, and equivalent to an arbitrary removal.   In the absence of any statutory specification the sufficiency of the cause should be determined with reference to the character of the office, and the qualifications necessary to fill it.   *Bagg's Case*, 11 Coke, 93b; *Rex* v. *Richardson*, 1 Burr. 517–540; *State* v. *Love*, 39 N. J. Law, 14; *State* v. *McGarry*, 21 Wis. 496; *State* v. *Common Council*, 9 Wis. 254; *People* v. *Thompson*, 94 N. Y. 451.

While the charges need not be stated with the technical nicety or formal exactness required in pleadings in courts, yet they must be specifically stated with substantial certainty.   The specifications of the alleged causes should be formulated with such reasonable detail and precision as shall inform the incumbent what dereliction of duty is urged against him.   There should be a statement of charges with a specification of facts constituting a sufficient cause for removal, sufficiently distinct to apprise the officer of the grounds upon which the charges are based.   *Andrews* v. *King*, 77 Me. 224; *People* v. *Thompson, supra;* Dillon, Mun. Corp. § 255.

The sufficiency and reasonableness of the cause of removal are questions for the courts.   Dillon, Mun. Corp. § 252, and cases cited. This has been the settled law ever since *Bagg's Case, supra,* and we are not aware of any respectable authority to the contrary. Of course, cases (many of which are cited by respondents) where an officer or body was vested with an absolute power of removal at discretion are not in point.

Upon examination of the charges in this case we are clearly of opinion that they are not sufficient in law. Considering them as a whole, they show on their face that they were not formulated in a very judicial frame of mind. They read more like a heated hostile declamation than a calm and deliberate statement of charges with a view to a fair investigation. Many of them are mere glittering generalities, without any statement or specification of facts; such as, for example, "using their official positions to gratify their personal feelings and prejudices;" "that neither ability, impartiality, nor sense of justice characterize their management of one of the most important branches of the city government;" "that the gratification of their personal spites and prejudices is the paramount motive often actuating and controlling them in the supposed discharge of their duties;" "that they have no just appreciation of the responsibilities that should characterize the discharge of the duties of the important office of fire commissioner," etc. It hardly need be said that such general accusations as these are entirely lacking in any specification of facts to apprise any one of the grounds of the charges which he is called on to meet.

Some of the charges, such as that "the reasonable recommendations and requests of the common council are treated with the utmost contempt," have no relation whatever to the administration of the office of fire commissioner, and remind us of some of the charges in *Bagg's Case.*

The first part of the fifth charge, viz. failure to make monthly reports to the common council, as required by the charter, was virtually abandoned, no attempt having been made to substantiate it, and hence may be left out of account altogether. The only charges that even attempt to state any specific cause for removal are the fourth and the last part of the fifth. Indeed, these are the only ones which counsel for respondents seriously attempts to support. The fourth relates to the discharge of officers of the fire department without cause, or from improper motives, but is entirely lacking in specifications of either dates or names.

As the board of fire commissioners has, under the charter, absolute power to discharge any of the employes or officers of the department at their discretion, and may, in the performance of their duties, have had occasion to exercise this power frequently, so

general and indefinite a statement is not sufficient to advise them what particular acts are the basis of the charge. The last part of the fifth charge, accusing the relators generally of being "incompetent" and "inefficient," without specifying wherein or in what respect, is also entirely too vague and general. We agree with counsel that "incompetency" and "inefficiency" in the discharge of official duty may be good grounds for removal, and that it may not be necessary to specify in detail particular acts or facts. But these words are so general that they may mean anything or everything which might constitute good cause for removal. For example, incompetency might result from physical disability, from mental disability, or from lack of integrity, etc. So, inefficiency might consist of habitual neglect of duty, incapacity to preserve discipline, or of a variety of things. Hence, while it is not required to go into details, yet the charges ought at least to advise the officer in what respect he is claimed to be incompetent or inefficient. Our conclusion is that none of the charges relied on are sufficient in law.

This renders it unnecessary to consider the evidence at all. We may say, however, that a perusal of it impresses us with the feeling that it furnished no reasonable basis for the action of the council in removing the relators from office. It is perfectly apparent that this whole trouble grew out of a foolish quarrel between the common council and the board of fire commissioners, over the suspension by the latter of a fireman by the name of Twaddle.

The proceedings of the common council in the matter are quashed.

VANDERBURGH, J., absent, took no part.

(Opinion published 55 N. W Rep. 118.)