## STATE v. J. L. ROGERS.[1]

### April 9, 1920.

### No. 21,604.

**Criminal law — keeping bawdy house — competent evidence.**

1. In a prosecution for keeping a house of ill-fame, testimony showing the character of those who visited it and what they said and did while there is competent to show the character of the place.

**Same.**

2. The claim that the testimony of certain witnesses to the effect that prostitutes frequented the place related to a time before defendant became the proprietor of the house, is not borne out by the record.

**Competent evidence.**

3. The offense is continuing in its nature and evidence showing the character of the place shortly before and shortly after the date charged was competent as tending to show its character on that date.

**Striking out testimony of reputation.**

4. The court did not abuse its discretion in refusing to strike out the testimony of a witness, as to the reputation of the place, who stated on cross-examination that his information was received from people who had a place of business in the neighborhood and were there daily, but resided elsewhere.

[1] Reported in 177 N. W. 358.

**Knowledge of keeper — evidence sufficient.**

 5. The evidence warranted the jury in finding that immoral acts were committed so frequently and openly that the proprietor must have known that his house was resorted to for the purpose of indulging in such practices.

**Constitution — jury's view of premises not violation of defendant's right.**

 6. Neither the constitutional right of the defendant to be confronted by the witnesses against him, nor his statutory right to be present at the trial, were violated by allowing the jury to view the premises in his absence.

**Verdict supported by evidence.**

 7. The evidence is sufficient to sustain the verdict.

Defendant was indicted by the grand jury of Hennepin county, charged with the crime of keeping a house of ill-fame, tried in the district court for that county before Hale, J., and a jury, and found guilty as charged in the indictment. Defendant's motion for a new trial was denied. From the judgment entered on the verdict, sentencing him to three years at hard labor in the state prison, defendant appealed. Affirmed.

*John F. Dahl* and *George T. Simpson,* for appellant.

*Clifford L. Hilton,* Attorney General, *James E. Markham,* Assistant Attorney General, *William M. Nash,* County Attorney, and *Frank M. Nye,* Assistant County Attorney, for respondent.

Taylor, C.

Defendant appeals from a judgment convicting him of the crime of keeping a house of ill-fame and assignation. He urges as grounds for a new trial: (1) That improper evidence was received over his objection; (2) that he is not shown to have had knowledge of the evil practices indulged in on his premises; (3) that the verdict is not justified by the evidence, and (4) that it was error to send the jury to view the premises without permitting him to accompany them.

Defendant was the proprietor of the Revere Hotel in the city of Minneapolis. The office of the hotel, a café and a saloon were located on the ground floor of the building, and were connected with each other

by doors and passageways. There were three entrances to the building from the street and two from an alley or court at the rear.

1. The American Protective League, an organization formed to aid the United States department of justice in enforcing the war-time regulations of the government, seems to have made the investigations which resulted in this prosecution. Two members of the league testified to the effect that on the evening of December 19, 1918, they registered at the hotel and were assigned rooms, that they informed the clerk at the desk that they wanted two women, and that the women came to their rooms a few minutes thereafter. Two other members of the league testified to the effect that on the evening of December 28, 1918, they entered the cafe, seated themselves at a table and bought a drink; that they were asked to go upstairs by two women who came to the table; that they suggested that it might not be safe but were assured that it was as the hotel was protected; that they went to the hotel office and asked the clerk at the desk if they could have women in their rooms and were informed that they could; that they registered and went to their rooms where they found the women waiting for them. These four witnesses were permitted to testify as to what the women said and did on these two occasions. Defendant insists that his objection to this testimony should have been sustained as he was not present on either occasion. It was incumbent on the prosecution to show the character of the place, and this could be done by showing the character of those who visited it and what they said and did while there. Such testimony is not inhibited by the rule excluding hearsay evidence invoked by defendant. State v. Smith, 29 Minn. 193, 12 N. W. 524; State v. Terrett, 131 Minn. 349, 154 N. W. 1073.

Defendant asserts that some of the testimony to the effect that prostitutes frequented the place related to a time before he became its proprietor and was inadmissible for that reason. No objection was made on that ground at the time the testimony was received, and no claim was then made that defendant was not the proprietor at the time referred to. The present contention seems to be an afterthought based on the fact that defendant's hotel license was issued on September 12, 1918, and that the testimony in question related to the time of the State Fair held the first week in September and to a period in August. At what

145 M—20.

time defendant assumed control of the hotel does not clearly appear. His application for the license is dated May 17, 1918, and the evidence is to the effect that he was in charge of the place as early as July and was there continuously thereafter. We find no basis for the objection now urged.

Defendant was charged with keeping a house of ill-fame and assignation on the twenty-eighth day of December, 1918. A woman who had been sentenced to the workhouse in the latter part of January, 1919, testified that in the early part of that month she had slept at the hotel with a man not her husband every night for a period of about two weeks. Defendant challenges this testimony, on the ground that the occurrence took place after the date charged in the indictment. The offense charged consists of a course of conduct continuing in its nature, and evidence tending to show the character of the place shortly before and shortly after December 28 was competent as a basis for an inference that its character was the same on that date.

It appeared from the cross-examination of a witness who had testified that he knew the reputation of the house and that it had the reputation of being a house of assignation, that he had received his information from government employees who did not live in that locality and from members of the league who had places of business in that locality and were there every day, but lived elsewhere. Defendant moved to strike out his testimony, on the ground that he was not competent to testify to the reputation of the place, and insists that the court erred in denying this motion. People who were at the hotel, or in its vicinity, frequently for extended periods were in position to know its character, although they did not live in the neighborhood, and the court did not abuse its discretion in refusing to strike out the testimony. State v. Lee, 80 Iowa, 75, 45 N. W. 545, 20 Am. St. 401.

While some of the other rulings are questioned, we find none of which defendant has cause to complain or which require special mention.

2. It is probably true that there is no direct evidence that defendant had knowledge of the immoral practices indulged in on his premises. He employed a manager who had charge of the hotel and the café, but he himself had charge of the saloon and was about the place continuously, and the evidence justified the jury in finding that the illicit com-

merce was indulged in so openly and for such a length of time that he must have known that his hotel was resorted to for the purpose of indulging in such evil practices.

3. We find sufficient evidence to sustain the verdict. What has already been said gives an indication of its character and we will merely add that it sufficiently appeared that prostitutes frequented the place for immoral purposes.

4. When a witness was describing the location of the entrances to the building and of the passageways within the building, defendant's counsel requested the court to send the jury in charge of officers and accompanied by counsel to view the premises. At first the court declined to do so, but later said that if neither side objected he would send the jury in charge of two officers to look over the building, in order that they might "be able to apply the evidence more intelligently." In response to an inquiry he stated that one attorney for the defendant and one for the state might accompany them. Before the jury had left the room counsel for defendant stepped to the desk and asked whether the defendant might accompany them and was answered in the negative. This ruling was apparently acquiesced in without objection at the time, but presents the most doubtful question in the case. Section 9204, G. S. 1913, provides: "The court may order a view by any jury impaneled to try a criminal case." This statute was enacted when Minnesota was a territory and has been in force in the same form ever since, but whether the right "to be confronted with the witnesses against him" given the accused by section 6 of article 1, of the Constitution, or the right to be present at the trial given him by section 9200, G. S. 1913, gives him the right to be present while the jury are making such view, seems never to have been considered or passed upon by this court.

The decisions in other jurisdictions are conflicting. Several courts hold that allowing a view in the absence of the defendant is reversible error. The courts which take this position usually assign as the reason therefor that the defendant has the absolute right to be present throughout the trial and whenever evidence of any sort is received, and that a view of the premises by the jury is a part of the trial because ordered by the court, and is a taking of evidence because the information obtained will be used in arriving at a verdict. Benton v. State, 30 Ark. 328; Foster v. State, 70 Miss. 755, 12 South. 822; People v. Bush, 68 Cal.

623, 10 Pac. 169; State v. Bertin, 24 La. Ann. 46; Rutherford v. Commonwealth, 78 Ky. 639; Carroll v. State,. 5 Neb. 31.

Dean Wigmore in his learned treatise on Evidence, after discussing the history and purpose of the constitutional right of confrontation, takes the position that this right applies and was intended to apply only to testimonial evidence, that its purpose was to secure a proper opportunity for cross-examination, and that it is not violated by allowing the jury to view the premises in the absence of the defendant. He also remarks in substance that the argument that the defendant has the right to be present while the jury are viewing the premises, for the reason that the view is a part of the trial and the defendant is entitled to be present at all parts of the trial, could be advanced equally well to give the defendant the right to be present while the jury are deliberating over their verdict in the jury room as that is equally a part of the trial. 3 Wigmore, Ev. § 1803. In the notes appended to this section most of the decided cases bearing on the question are cited.

In People v. Thorn, 156 N. Y. 286, 50 N. E. 947, 42 L.R.A. 368, a capital case, the New York court, after an exhaustive review of the authorities and of the principles involved, reach the conclusion that allowing the jury to view the premises in the absence of the defendant, does not infringe his right to be confronted by the witnesses nor his right to be present at the trial, and add:

"It appears to us that the more rational and reasonable construction to be given to the provisions of the section is that the view is not the taking of testimony within the meaning of the bill of rights, but that the sole purpose and object of the view is to enable the jurors to more accurately understand and more fully appreciate the testimony of witnesses given before them."

The following decisions also support the rule that a view may be had in the absence of the defendant. Hays v. Territory, 7 Okl. 15, 54 Pac. 300; State v. Reed, 3 Idaho, 754, 35 Pac. 706; State v. Hartley, 22 Nev. 342, 40 Pac. 372, 28 L.R.A. 33; State v. Ah Lee, 8 Ore. 214; State v. Moran, 15 Ore. 262, 14 Pac. 419; State v. Lee Doon, 7 Wash. 308, 34 Pac. 1103; Commonwealth v. Webster, 59 Mass. (5 Cush.) 295, 52 Am. Dec. 711; Commonwealth v. Salyards, 158 Pa. St. 501, 27

Atl. 993; Commonwealth v. Van Horn, 188 Pa. St. 143, 41 Atl. 469; State v. Mortensen, 26 Utah, 312, 73 Pac. 562, 633; Blythe v. State, 47 Oh. St. 234, 24 N. E. 268; Shular v. State, 105 Ind. 289, 4 N. E. 870, 55 Am. Rep. 211; State v. Adams, 20 Kan. 311.

In Chute v. State, 19 Minn. 230 (271), this court said: "The view is not allowed for the purpose of furnishing evidence upon which a verdict may be found, but for the purpose of enabling the jury better to understand and apply the evidence which is given in court," and held that an instruction which permitted the jury to use as evidence what they saw or learned at the view, was error. There seems to have been no subsequent criminal case in which the purpose of the view was raised or considered, but the rule above stated has been consistently followed and applied in civil cases ever since. Brakken v. Minneapolis & St. L. Ry. Co. 29 Minn. 41, 11 N. W. 124; Schultz v. Bower, 57 Minn. 493, 59 N. W. 631, 47 Am. St. 630; Northwestern Mut. L. Ins. Co. v. Sun Ins. Office, 85 Minn. 65, 88 N. W. 272.

The rule followed and applied by this court in respect to the purpose and use to be made of a view is in harmony with the rule adopted and applied by those courts which hold that the jury may be allowed to view the premises in the absence of the defendant without infringing any of his constitutional or statutory rights. Our Constitution provides:

"The accused shall enjoy the right  *  *  *  to be confronted with the witnesses against him." Article 1, § 6.

Our statute provides:

"If the indictment be for a misdemeanor, the trial may be had in the absence of the defendant, if he shall appear by counsel; but, if it be for a felony, he shall be personally present." G. S. 1913, § 9200.

A careful consideration of these provisions and of the purpose intended to be accomplished by them as elucidated by their history and by the authorities cited, leads us to the conclusion, supported by the weight of authority, that a view of the premises by the jury in the absence of the defendant does not violate his right to be confronted by the witnesses against him nor his right to be present when his trial is had. On such a view care must be taken to see that the jury receive no information other than that obtained by looking over the premises, and any ex-

planations deemed desirable by either party should be made by witnesses sworn and examined in open court in the court room. The requisite care was taken in the present case. The jury, accompanied by an attorney for the defendant and an attorney for the prosecution, were taken from the court house to the hotel building, some blocks distant in the same city, and back to the court room by two officers who kept them together during their absence and permitted no communication with them. We find nothing to indicate that the court improperly exercised its discretion or prejudiced the substantial rights of the defendant by refusing him the privilege of accompanying them.

The judgment is affirmed.