STATE EX REL. HARDSTONE BRICK COMPANY OF
APPLETON, INC. v. DEPARTMENT OF COMMERCE,
SECURITIES DIVISION, AND ANOTHER.[1]

April 5, 1928.

No. 26,194.

**When holding of department of commerce will not be disturbed by this court.**

1. In certiorari to review a holding of the department of commerce this court makes but a limited review and disturbs its holding only in the event that it is beyond its jurisdiction, or arbitrary and oppressive, or without foundation in the evidence.

**Department was justified in denying relator's application.**

2. The relator brick company, before its incorporation, sold Volkszeitung gold notes which were exchangeable for the stock of the brick company when incorporated. This was a subterfuge and an evasion of the statute prohibiting a sale before registration of securities with the department, and, with other sales made after incorporation, justified the department in denying its application for registration.

**Department was justified in finding sale of stock would defraud the public.**

3. The department was justified in finding that the sale of the stock would operate as a fraud on the public.

**Department not limited to jury trial rules of evidence.**

4. The department in considering evidence is not limited to jury trial rules of evidence.

**Hearing was not conducted without due process.**

5. The denial of registration was not without due process.

Licenses, 37 C. J. p. 242 n. 1; p. 272 n. 65, 67.

Certiorari to review an order of the department of commerce, securities division, denying the application of relator to register its capital stock for sale in Minnesota. Affirmed.

*Frank E. Wright* and *George T. Simpson,* for relator.

*G. A. Youngquist,* Attorney General, for respondents.

[1]Reported in 219 N. W. 81.

DIBELL, J.

Certiorari from this court to the department of commerce to review its order of January 12, 1927, confirming its order of October 19, 1926, denying the application of the relator, Hardstone Brick Company of Appleton, to register its capital stock for sale in Minnesota. The petition asked for the registration of $185,000 in stock. Later the amount was reduced to $150,000.

By L. 1925, p. 197, c. 192, § 5, it is provided:

"The commission shall have power to deny an application for registration if the securities are fraudulent or if it appears to the commission that the sale thereof would work a fraud on purchasers thereof, or if the applicant has violated any of the provisions of this act, or any registration or lawful order of the commission, or for good cause appearing to the commission."

The commission found that the relator had sold stock prior to registration in violation of § 4 of the act, and that the sale of its stock would work a fraud on purchasers.

1. This court can make but a limited review of the determination of the department. If it keeps within its jurisdiction and its action is not arbitrary or oppressive or unreasonable or without evidence to support it, the court cannot interfere. State ex rel. Dybdal v. State Sec. Comm. 145 Minn. 221, 176 N. W. 759; State ex rel. Saari v. State Sec. Comm. 149 Minn. 101, 182 N. W. 910.

2. Section 4 of the statute forbids the sale of securities unless or until they are registered.

Prior to the incorporation of the relator $14,000 or $15,000 of gold notes of the Volkszeitung Printing & Publishing Company, with which one C. A. Cochran, also connected with the hardstone company, was concerned, were sold in the vicinity of Appleton with the understanding that the proceeds would be used for the purpose of purchasing from a German company the machinery for the manufacture of the brick, and that upon the incorporation the notes would be exchanged for stock. There is evidence that in addition some stock was sold after incorporation. There was no registration. The evidence is not very definite but it is sufficient. The

sale of the Volkszeitung notes to be exchanged afterwards for stock was a subterfuge and a violation of § 4. Such an evasion is not to be tolerated, and the sale of the notes with an arrangement for exchange for stock is treated as a sale in violation of the statute.

3. The department was justified in finding that the sale of stock would operate as a fraud on the purchasing public. Cochran was to have various commissions for the sale of the machinery which was to be used in the manufacture of the brick. He was to have a royalty on the product. There was evidence that the machinery was to be purchased at an exorbitant price. The commission could well find that there was no particular demand for brick in the vicinity and that a brick making plant, especially with so large a capitalization, could not be successful. The incorporators, with one exception, were retired farmers in comfortable circumstances. They knew nothing of brick making. They had no valuable experience in business. The other incorporator knew nothing of brick making, and his business experience was not such as to suggest that he would be useful in the management of the business. It is not necessary that an actual fraudulent purpose be found. We do not say that the evidence would not sustain a finding of such purpose. It is for the commission to find just what a corporation purposing to float its stock has behind it. And there was nothing here promising success.

4. The relator complains of the character of evidence received. Evidence was received which was not jury trial evidence. The duties of the department are largely administrative. In so far as its acts are legislative or administrative in character, or judicial or quasi judicial and such as to permit of review on certiorari, rules of evidence are not strictly applied. See State ex rel. Hart v. Common Council, 53 Minn. 238, 55 N. W. 118, 39 A. S. R. 595; State ex rel. Kinsella v. Eberhart, 116 Minn. 313, 133 N. W. 857, 39 L.R.A.(N.S.) 788, Ann. Cas. 1913B, 785; State ex rel. Burrows v. Truax, 139 Minn. 313, 166 N. W. 339; State ex rel. Hunt v. City of Montevideo, 142 Minn. 157, 171 N. W. 314; State ex rel. Early v. Wunderlich, 144 Minn. 368, 175 N. W. 677; In re Nash, 147 Minn. 383, 181 N. W. 570; Western P. M. Chem. Co. v. U. S. 271 U. S. 268,

271, 46 S. Ct. 500, 70 L. ed. 941; U. S. v. Abilene & So. Ry. Co. 265 U. S. 274, 288, 44 S. Ct. 565, 68 L. ed. 1016, and cases cited. There was ample evidence, the admissibility of which cannot be questioned in such a proceeding as this, to sustain the finding of the commission.

It is a mistake to suppose a conclusion cannot be reached safely by administrative bodies unless they proceed in accordance with jury trial rules of evidence. Most of the world's work is done without. How far courts should go in permitting evidence not receivable in common law trials is in part a question of practical convenience and policy, and is affected by the character of the administrative body and the question under consideration by it. Just what rule should be the guide we are not now concerned to inquire. The department went far afield. In no event was the relator prejudiced. The result reached by the department was practically the necessary one. The subject of rules of evidence before administrative bodies is interestingly considered in 1 Wigmore, Ev. (2 ed.) § 4a-c, pp. 21-54, with a full citation of cases and references to articles in the law journals.

5. Closely connected with the question of evidence is the relator's claim that its hearing was conducted without due process.

The relator was entitled to a hearing with what the term implies. The department may have been arbitrary and it may have gone too far. The tendency of commissions as well as of courts is to extend their jurisdiction and powers. Sometimes a commission may act upon its own knowledge. See State ex rel. Early v. Wunderlich, 144 Minn. 368, 175 N. W. 677. Again it may not. Chicago Junction case, 264 U. S. 258, 44 S. Ct. 317, 68 L. ed. 667. The precise scope of the department's inquiry we do not determine. The two findings of the department referred to in paragraphs 2 and 3 could not well have been different. If it be conceded that the department went too far in its hearing, there was no prejudice to the relator. There should on no theory have been a registration of the stock.

Order affirmed.

HILTON, J. took no part.