In the Matter of the Application of MARTIN J. YATES, Petitioner, for a Certiorari Order against EDWARD P. MULROONEY and Others, Constituting the State Liquor Authority of the State of New York, Respondents.

Fourth Department, June 26, 1935.

*Michael J. Montesano,* for the petitioner.

*Robert Boasberg* [*Nelson Ruttenberg, Lester H. Schreiber* and *Monroe I. Katcher, II,* on the brief], for the respondents.

EDGCOMB, J. On April 10, 1935, the State Liquor Authority of the State of New York made an order revoking a license which had been issued to the petitioner, Martin J. Yates, to sell liquor at retail for consumption upon the premises known as 216 Ellicott street, Batavia, N. Y. We are asked to review such determination of the Liquor Authority, and to annul the revocation.

Section 118 of the Alcoholic Beverage Control Law (Laws of 1934, chap. 478) provides that any license issued pursuant to the act may be revoked for cause, and must be revoked for certain specified reasons. The revocation of the license in question was not mandatory under this section, but it is asserted by the defendants that sufficient cause exists to justify its rescission.

Subdivision 2 of section 106 of the Alcoholic Beverage Control Law provides that " no retail licensee for on-premises consumption shall keep upon the licensed premises any liquors and/or wines in any cask, barrel, keg, hogshead or other container, except in the original sealed package, containing quantities not to exceed one quart each of liquor or fifteen gallons each of wine, as received from the manufacturer or wholesaler." It is for the alleged violation of this provision that this license was retracted. The wisdom of such a requirement is apparent, and if the statute was violated in this particular instance, and the proper procedure has been followed, the action of the State Authority should be upheld.

Section 119 of the act outlines the procedure to be taken in a case where it is sought to revoke or cancel a license. A hearing must be had at which the licensee " shall be given an opportunity to be heard." The petitioner here was given notice and accorded a hearing before an executive officer of the State Authority. Witnesses were sworn and examined, after which said officer found the petitioner guilty of the charge made against him, and recommended that his license be revoked. The findings made, and the recommendation thereon, were approved by the State Authority, and an order was duly made rescinding said license.

The serious question is whether there was sufficient evidence of probative value to warrant the order.

Before referring to the evidence relied upon to warrant this revocation, attention should be called to the fact that this license which has been annulled, while it is of value to the holder, and cannot be taken from him capriciously or arbitrarily, is not property in any legal or constitutional sense; it is simply a temporary permit, issued in the exercise of the police power of the State, to do that which otherwise would be unlawful to do. (*People ex rel. Lodes* v. *Department of Health,* 189 N. Y. 187, 191; *Metropolitan Board of Excise* v. *Barrie,* 34 id. 657; *Public Service Commission* v. *Booth,* 170 App. Div. 590, 591.)

No individual has an inalienable or inherent right to sell intoxicants in such a sense as to exempt him from legislative control. We have not before us a case where vested rights are being taken from one who is protected by the due process clause of the Constitution. The State may step in at any time, and prohibit the sale of intoxicants at any place or by any person, provided such action is taken pursuant to statute, and is not arbitrary or capricious, no matter how long the business has been carried on, or how serious a loss may result from such prohibition. (*Matter of Hering*, 133 App. Div. 293, 295; affd., 196 N. Y. 218; *People ex rel. Bernard* v. *McKee*, 59 Misc. 369, 370, 371; affd., 126 App. Div. 954.)

Petitioner took his license subject to such conditions as the Legislature saw fit to impose. (*Commonwealth* v. *Kinsley*, 133 Mass. 578.)

Under these circumstances, if there were sufficient facts before the State Authority, so that it can be said that its action was not arbitrary, its determination should be upheld. A certain discretion is given the Authority; not, of course, an imperious or despotic one, but a right to act in such a way as will tend, in its honest judgment, to promote the public good, and further the objects which the act was designed to accomplish.

The evidence shows that before any proceedings were taken to cancel this license, a State and county investigator visited petitioner's premises, and found three bottles of Town Tavern whisky, which had been opened, and all of which were partly filled, standing back of the bar, along with other bottles of the same kind of whisky, the seals of which had not been broken. The inspectors tasted and smelled these three bottles, and became suspicious of the contents. They required the petitioner to open another bottle of the same brand, the seals of which had not been broken, and compared its contents with that of the three partly empty bottles. The color, taste and smell were different. An analysis of the contents of all four containers was made. The unopened bottle contained 49.8 per cent of alcohol by volume, .0231 per cent of extract, and no added color. The opened bottles contained from 45.2 per cent of alcohol by volume, and from .7247 per cent to .2162 per cent of extract, and in all three added color was present; glycerine was found in two of the opened bottles.

The inspector sent the analysis to the manufacturer of the whisky in question, and received a reply stating that it was " very obvious that this is spurious merchandise; " that Town Tavern whisky was bottled at 100 proof, or 50 per cent alcohol by volume, and was carefully checked by government inspectors at the plant, and that, while it was conceivable that after the bottle was opened, absorption of moisture from the air and evaporation might reduce

the proof a fraction of 1 per cent, it would be impossible, under normal circumstances, for the proof to drop from 50 per cent to as low as 45.2 per cent; that Town Tavern is a straight whisky, and contains no glycerine or coloring matter.

This letter was offered and introduced in evidence, over petitioner's objection, and he bases his claim of error here largely upon the receipt of this hearsay evidence.

If this was a trial in an ordinary judicial proceeding, the reception of this letter would concededly have been error.

But here we have a hearing before an administrative board. While it is true that it was exercising a quasi-judicial function, the practice in such a proceeding is somewhat informal, and the strict rules of evidence which control judicial officers are not rigidly enforced. (*People ex rel. Hirschberg* v. *Board of Supervisors*, 251 N. Y. 156, 160, 161; *People ex rel. Sutliff* v. *Supervisors*, 74 Hun, 251, 253; *People ex rel. Cochran* v. *Town Auditors*, Id. 83, 86; *State ex rel. Hardstone Brick Co.* v. *Dept. of Commerce*, 174 Minn. 200, 202; 219 N. W. 81.)

Nevertheless, when the statute provided for a hearing, at which the licensee should be given an opportunity to be heard before his right to do business could be taken from him (§ 119), and when it made the action of the Liquor Authority subject to review by the court (§ 121), that necessarily carried with it the requirement that the license could only be annulled on competent proof, and made the Liquor Authority something more than a mere administrative body; it gives to that body quasi-judicial functions. The licensee is protected in his right to retain his license unless it be ascertained upon a hearing that good cause exists for its revocation. He must be confronted with the witness, and be given an opportunity to cross-examine his accusers. Otherwise he has not had a fair hearing. (*Matter of Greenebaum* v. *Bingham*, 201 N. Y. 343, 347; *Interstate Commerce Commission* v. *L. & N. R. R. Co.*, 227 U. S. 88, 91.)

Hearsay testimony is barred in New York State; there must be substantial common-law evidence of probative character to sustain the finding of the Liquor Authority, or else its decision will be set aside by the court. The weight of the evidence is not for the court, but its presence is absolutely necessary. A finding without some evidence of probative value would be arbitrary and baseless. (*Matter of Carroll* v. *Knickerbocker Ice Co.*, 218 N. Y. 435, 440, 441; *Interstate Commerce Commission* v. *L. & N. R. R. Co.*, 227 U. S. 88, 91.)

I find here sufficient evidence of the character required to sustain the finding of the Liquor Authority. It may not be as strong as might be desired, or as could have been obtained, but it is

enough, in my opinion, to uphold the order made. That being so, we may treat the letter as surplusage.

Why was it necessary for the petitioner to have three bottles of this brand of whisky open at one time? One would have been sufficient to serve his customers. Petitioner sought to explain this somewhat suspicious circumstance, when it was called to his attention by the inspectors, by saying that his wife was sick in the hospital, and that he had left his brothers in charge, and that " they no doubt didn't see the bottle open and opened another." On the hearing he abandoned this excuse, and gave as his reason for opening the three bottles the fact that on one occasion a customer, Mr. German, complained that the whisky served to him out of one bottle tasted " like moon," and to satisfy him a second bottle was opened, which did not taste any better, and so a third was uncorked. It is rather significant that the petitioner continued to sell the contents of those bottles which tasted " like moon; " they were only partly filled when the inspectors arrived. Furthermore, the evidence shows that the contents of these three partly filled containers differed materially in color, taste, smell and content from that of the unopened bottle. We may assume that there is a uniformity in the same brand of whisky, and the fact that the contents of these opened bottles differed so materially from that in the sealed container is some evidence that it had been diluted, and that the liquor offered for sale was not kept in the same original container in which it was received by the retailer. It should also be noted that the petitioner formerly sold this whisky for fifteen cents an ounce, or two ounces for twenty-five cents, and that he reduced his price to ten cents to meet competition, and keep his business. An incentive was, therefore, present to recoup the loss of profits by diluting the contents of the bottle.

When the administrative body having in charge the enforcement of this law, in attempting to carry out the policy of the State and the purpose of the act, as set forth in section 2, finds upon these facts which I have outlined, and which are established by common-law proof, that sufficient evidence exists to warrant a cancellation of petitioner's license, I do not think that we can say that it acted in an arbitrary manner, or that it did not have sufficient facts before it to warrant its determination.

The determination of the State Liquor Authority should, therefore, be upheld and confirmed, with fifty dollars costs and disbursements.

All concur. Present — SEARS, P. J., TAYLOR, EDGCOMB, THOMPSON and CROSBY, JJ.

Determination confirmed, with fifty dollars costs and disbursements.