## HENRY SABES v. CITY OF MINNEAPOLIS AND OTHERS.

120 N. W. (2d) 871.

March 22, 1963—No. 39,000.

*Dorfman, Rudquist, Jones & Ramstead* and *Leo Dorfman,* for appellant.

*Keith M. Stidd,* City Attorney, and *D. J. Shama,* Assistant City Attorney, for respondents.

OTIS, JUSTICE.

This is an action against the municipal authorities of the city of Minneapolis to enjoin the revocation of various licenses held by plaintiff in connection with the operation of an establishment known as "South of the Border—Key Club," located at South Washington and 14th Avenues South in the city of Minneapolis. The district court entered findings of fact and conclusions of law refusing to enjoin the revocation of plaintiff's licenses. From an order denying his motion for amended findings or a new trial plaintiff appeals.

The record discloses that plaintiff has been the owner of a restaurant and bar at 1323 South Washington Avenue for over 25 years. Neither he nor his employees have ever been convicted of any offense arising

out of its operation. Plaintiff testified that he had invested over $160,000 in the establishment and that it had a value exceeding $200,000. Each year the city has issued plaintiff an on-sale liquor license, as well as licenses for nonintoxicating beverages, food, cigarettes, and for the operation of a dance hall and a tavern.

On October 30, 1962, the Licenses Committee of the Minneapolis City Council served the following notice on plaintiff:

"NOTICE TO APPEAR

"Date October 30, 1962

"To Henry Sabes

"Address   2840 Monterey Parkway

"You will please take notice that at a meeting of the LICENSES Committee of the Minneapolis City Council to be held in Room 305, of the City Hall, Minneapolis, Minnesota, on November 7, 1962 at 9:00 a. m. The Committee will consider revocation of all your licenses due to the conduct and operation of your business.

"You may appear and present such evidence as you desire. Failure to appear may jeopardize your license * * *.

"By order of the LICENSES Committee.

"By RUSSELL R. GREEN, License Inspector.

By M. Warner."

Pursuant to that notice, plaintiff and his counsel appeared before the Licenses Committee on November 7, 1962, at which time plaintiff's counsel asked whether any charge was being placed against his client arising out of the operation of the bar in question. The committee chairman replied that the purpose of the hearing was to determine "whether or not this is a desirable type of operation and an operation we would like to see continued." Counsel persisted in his efforts to secure a specific statement of what conduct the committee claimed was in violation of the law. The most he could secure from the committee was an observation by the city attorney that it was an inquiry into the conduct of plaintiff's business based on a report by the chief of police. Thereupon the chief presented and discussed a report dated October 22, showing, among other things, the number of arrests and convictions for morals violations resulting from contacts made at the South of the

Border Bar. He was quick to concede, however, that the evidence was not of a character which would support a criminal prosecution. At the same hearing, William Brady, head of the morals squad, was called and asked to produce his files and records showing violations for prostitution and other offenses resulting from contacts at plaintiff's bar. Counsel for plaintiff directed the committee's attention to the authorities holding that an owner may not have his liquor license revoked for condoning the presence of sex perverts without some showing of a violation of the law occurring on the premises. Counsel protested that the mere presence of prostitutes in plaintiff's bar was not in itself a violation warranting revocation. With this contention the city attorney agreed.

The hearing before the Licenses Committee was continued and conducted on November 13, November 20, and November 28. On November 29, 1962, the committee recommended to the city council that all of the plaintiff's licenses for the operation of the premises at 1323-1329 South Washington Avenue be revoked, and on the following day the city council acted accordingly. This action to enjoin the revocation followed.

There are three basic issues for determination: (1) Whether the notice of hearing before the Licenses Committee was adequate to confer jurisdiction; (2) whether the consideration by the committee of files, records, and reports of the police department was proper under an exception to the hearsay rule; and (3) whether the record supports a finding that plaintiff violated Minn. St. 340.14, subd. 2, prohibiting licensees from permitting their premises to be used as a resort for prostitutes.

■  With respect to the notice, we have no hesitation in finding it wholly inadequate. While the trial court recognized its deficiencies, he concluded that the plaintiff's attorney had actual notice of the charges and an opportunity to be heard by the time the hearing was conducted on November 7 and November 13. With some misgivings, we hold that plaintiff has not been materially prejudiced by the insufficiency of the notice he received. The importance of furnishing proper notice was discussed by Mr. Justice Mitchell in State ex rel. Hart v. Common Council, 53 Minn. 238, 55 N. W. 118, which reviewed the action of a munici-

pality in discharging two city employees. He stated (53 Minn. 244, 55 N. W. 120):

"* * * The specifications of the alleged causes should be formulated with such reasonable detail and precision as shall inform the incumbent what dereliction of duty is urged against him. There should be a statement of charges with a specification of facts constituting a sufficient cause for removal, sufficiently distinct to apprise the officer of the grounds upon which the charges are based."

In State ex rel. Sholund v. City of Duluth, 125 Minn. 425, 429, 147 N. W. 820, 821, we noted the inadequacy of notice to appear before a city council in connection with a liquor license revocation, couched in terms similar to those employed in the instant case. We found the notice insufficient in failing to advise the licensee of the nature of the charges against him or the ground on which the revocation was sought, but held that the right to adequate notice had been waived. Here plaintiff did not waive his right to proper notice, and protected his record at every stage of the proceedings. However, we are of the opinion that in view of the narrow question on which the case eventually hinged, plaintiff has not been prejudiced. The revocation was ultimately based entirely upon a violation of § 340.14, subd. 2. The use of plaintiff's premises as a resort for prostitutes had been discussed with plaintiff's employees on previous occasions. He was fully aware of the complaints made by the police in this respect. There was ample opportunity to meet the evidence presented before the Licenses Committee, and plaintiff attempted to do so. There was no request for a continuance to present additional evidence on his behalf. Although we are somewhat reluctant to condone the inadequacy of the notice, we hold that under the circumstances a reversal and rehearing are not warranted.

■ The trial court found the evidence submitted to the Licenses Committee sufficient to justify the city council's determination that plaintiff had violated § 340.14, subd. 2, prohibiting a licensee from permitting his premises to be used as a resort for prostitutes.

Minneapolis Code of Ordinances, § 851.420, adopted pursuant to c. 4, § 16, of the city charter, permits the city council to revoke liquor

and other licenses for any violation of the laws of Minnesota relative to the sale of liquor "or to the conduct of the business of the licensee."

We hold that there was competent evidence on which the Minneapolis City Council could properly base a finding that plaintiff had violated § 340.14, subd. 2, and had consequently forfeited his right to retain his licenses.

No citizen has an inherent or vested right to sell intoxicating liquors, and municipal authorities have broad discretion within their geographical jurisdiction to determine the manner in which liquor licenses shall be issued, regulated, and revoked.[1] Inherent in the right to control the sale of liquor is the power to regulate related activities on the licensed premises.[2] Basically it is the council's duty to decide whether the licensee has been guilty of such unlawful conduct in the operation of his business that its continuance is detrimental to the public good.[3] In reviewing the proceedings of the municipality it is not the court's function to pass on the wisdom of the revocation, but only to determine whether the council exercised an honest and reasonable discretion, or whether it acted capriciously, arbitrarily, or oppressively.[4] For us to assume greater responsibility would constitute an unconstitutional usurpation of nonjudicial power.[5]

Turning to the evidence introduced over plaintiff's objection at the hearing before the Licenses Committee, it is obvious that nearly all of the testimony was hearsay. The question before us, however, is the extent to which such evidence was competent and admissible under a

[1] Crowley v. Christensen, 137 U. S. 86, 91, 11 S. Ct. 13, 15, 34 L. ed. 620, 624; Anderson v. City of St. Paul, 226 Minn. 186, 191, 32 N. W. (2d) 538, 541; Paron v. City of Shakopee, 226 Minn. 222, 228, 32 N. W. (2d) 603, 607, 2 A. L. R. (2d) 1227.

[2] Cleveland v. County of Rice, 238 Minn. 180, 183, 56 N. W. (2d) 641, 643.

[3] Moskovitz v. City of St. Paul, 218 Minn. 543, 549, 16 N. W. (2d) 745, 748.

[4] Bainbridge v. City of Minneapolis, 131 Minn. 195, 198, 154 N. W. 964, 966, L. R. A. 1916C, 224.

[5] Hunstiger v. Kilian, 130 Minn. 474, 479, 153 N. W. 869, 871, 1095.

common-law exception governing official statements, codified in § 600.13 as follows:

"The original record made by any public officer in the performance of his official duty shall be prima facie evidence of the facts required or permitted by law to be by him recorded. * * *"

The head of the morals squad brought to the Licenses Committee hearing a number of files which he testified were regularly kept in his division of the police department. These records consisted of so-called "kick sheets" made up by an arresting or investigating officer, showing the charge and details of the offense and the transcribed stenographic statements of witnesses. Briefly summarized, these written reports, received in evidence over plaintiff's objection, disclosed the following: Officer Foreman stated that on August 21, 1961, he went to the South of the Border Bar and ordered a drink; that he was shortly thereafter propositioned by a girl sitting next to him at the bar; that he followed her to a hotel room where he arrested her; and that she was convicted of prostitution and fined. Officer Brady corroborated the report by testifying that he saw them leave the bar and followed them to the hotel.

A written report of Officer Hannon described his being solicited in South of the Border on September 15, 1961; Officer Johnson was solicited there on October 11, 1961, both resulting in convictions. The records showed other solicitations and convictions in reports of Officer Erickson on October 11, 1961, Mr. Brady testifying to the arrests; Officer Farrell on November 7, 1961; Officer Martin on January 14, 1962; Officer Cooper on March 15, 1962; and Officer Thorson on April 14, 1962.

In addition to these written reports, Officers Foreman and O'Brien testified that they had been solicited at plaintiff's bar, and Officer Bailey testified that on three occasions he witnessed leaving the bar couples whose subsequent arrests resulted in convictions for prostitution.

There were other reports and statements offered and received at the Licenses Committee hearing which were clearly incompetent under any of the rules of evidence. These consisted, for the most part, of stenographically transcribed statements of men convicted of various morals

offenses, who identified plaintiff's bar as the place they were solicited. In addition there were parts of the official reports which purported to quote third persons as stating they had been solicited at plaintiff's bar. These statements were patently inadmissible as hearsay on hearsay.

Deferring for a moment a consideration of the admissibility of the officers' reports covering their own activities and observations, we look to the rules generally prevailing in administrative hearings. It has been held that neither pure hearsay nor hearsay corroborated by a mere scintilla of competent evidence is sufficient.[6] While administrative bodies are not held to the same strict rules as judicial tribunals, and incompetent evidence will not in itself be grounds for reversal, there must be some substantial evidence introduced to sustain their findings.[7] We have noted that most of the world's work is done without relying on jury-trial rules of evidence, and that the receipt of evidence by administrative bodies is to some extent a matter of practical convenience.[8] One court in writing a revocation opinion has wryly observed, "A policeman guiding himself by the strict rules of evidence would be chargeable with incapacity; and a general would be guilty of a military crime,"[9] quoting Sir Henry Sumner Maine in "The Theory of Evidence."

Since our statute embodies official statements as a common-law exception to the hearsay rule, the prerequisites for the admissibility of such evidence must be examined. Wigmore points out that the designation "public documents" is a misnomer and that a more accurate description of the exception is "official statements."[10] He notes that the exception is a matter of expediency and not necessity, since it need not be shown that the witness is unavailable by reason of death, absence, or other

---

[6]Walker v. City of San Gabriel, 20 Cal. (2d) 879, 881, 129 P. (2d) 349, 351, 142 A. L. R. 1383; Consolidated Edison Co. v. N. L. R. B. 305 U. S. 197, 59 S. Ct. 206, 83 L. ed. 126; Willapoint Oysters v. Ewing (9 Cir.) 174 F. (2d) 676, 691; 2 Davis, Administrative Law, § 14.11.

[7]Hughes v. Dept. of Public Safety, 200 Minn. 16, 25, 273 N. W. 618, 623; Note, 23 Minn. L. Rev. 74.

[8]State ex rel. Hardstone Brick Co. v. Dept. of Commerce, 174 Minn. 200, 203, 219 N. W. 81, 82.

[9]Walker v. City of Clinton, 244 Iowa 1099, 1111, 59 N. W. (2d) 785, 791.

[10]5 Wigmore, Evidence (3 ed.) §§ 1630 to 1635.

disability. The rationale of the rule seems to be that even if it is physically possible to produce a witness who has made a report, it would tend to disrupt the efficient functioning of public employees to require their repeated appearance in court.

Wigmore goes on to say that the disadvantages of failing to administer the oath or to subject the witness to cross-examination are offset by the probable trustworthiness of a report which is likely to be accurate if made in the regular course of the official's duties. There is a presumption that an official charged with performing a duty will correctly describe his activities. Nor is it essential that the official action be taken as a result of any formal direction or regulation. The officer may have performed his duties pursuant to a casual order of a superior. So also it is enough if they are functions necessarily inherent in the office. Finally, Wigmore observes that the rule is limited to official statements based on personal observation.[11]

In Federal practice the common-law exception to the hearsay rule is codified in 28 USCA, § 1733, and made applicable to criminal cases by Rule 27 of Federal Rules of Practice. A leading case construing the Federal statute is Olender v. United States (9 Cir.) 210 F. (2d) 795, 801, 42 A. L. R. (2d) 736, 744, where the court summarized the rule as follows:

"Generally stated, the rule is that all documents prepared by public officials pursuant to a duty imposed by law or required by the nature of their offices are admissible as proof of the facts stated therein. * * * The reason of the rule is that it would be burdensome and inconvenient to call public officials to appear in the myriad cases in which their testimony might be required in a court of law, and that records and reports prepared by such officials in the course of their duties are generally trustworthy. * * *

"Since the official documents are a substitute for the personal appearance of the official in court, it is generally held that such documents, to be admissible, must concern matters to which the official could testify if he were called to the witness stand. * * * Thus, this circuit and

---

[11]See, also, McCormick, Evidence, § 291.

most of the other circuits which have passed on the question have held that the facts stated in the document must have been within the personal knowledge and observation of the recording official or his subordinates, and that reports based upon general investigations and upon information gleaned second hand from random sources must be excluded."[12]

Appellant relies on Barnes v. Northwest Airlines, Inc. 233 Minn. 410, 433, 47 N. W. (2d) 180, 193, for the exclusion of the reports written by members of the morals squad. In that case we held that an army board's investigation report concerning the causes of an airplane accident was not admissible because it contained expressions of opinion or the exercise of judgment and discretion. The rule laid down in the Barnes case as it applies to official statements and to business records under § 600.02 is entirely consistent with the results we here reach. We have held in a number of cases that self-serving opinions and conclusions may not be received under the statute.[13] On the other hand, in construing § 600.02, we have allowed into evidence, as part of a record kept in the regular course of business, a salesman's daily reports written in his own hand, reciting factually the events which occurred while he was stranded in an automobile before he died from exposure.[14]

Based on these authorities, we hold that the written reports of members of the morals squad, reciting their personal observations and experiences with respect to the solicitation of customers by prostitutes in South of the Border—Key Club Bar, were admissible in this administrative hearing and support a finding that plaintiff's bar was used as a resort for prostitutes within the meaning of the statute. While much incompetent evidence was also received, we are of the opinion that in proceedings of this kind it did not invalidate or render the competent evidence ineffective to justify the license revocation.

■ Finally, it is the contention of appellant that the word "permit,"

---

[12]See, also, Jacobson v. Bryan, 244 Wis. 359, 367, 12 N. W. (2d) 789, 793; Hadley v. Ross, 195 Okla. 89, 91, 154 P. (2d) 939, 941.

[13]Brown v. St. Paul City Ry. Co. 241 Minn. 15, 26, 62 N. W. (2d) 688, 696, 44 A. L. R. (2d) 535; Boutang v. Twin City Motor Bus Co. 248 Minn. 240, 247, 80 N. W. (2d) 30, 37.

[14]Chillstrom v. Trojan Seed Co. 242 Minn. 471, 65 N. W. (2d) 888.

used in § 340.14, subd. 2, prohibiting a licensee from permitting the premises to be used as a resort for prostitutes, connotes knowledge and consent, and that the city has failed to sustain its burden of proof with respect to these elements. Plaintiff himself testified that he knew prostitutes frequented his establishment and knew their identity, but protested that he had no knowledge of their having solicited and that he could not evict them unless they were violating the law. In support of his position, appellant relies on State v. Robinson, 55 Minn. 169, 56 N. W. 594. That was an action to recover penalties against a pharmacist under a statute prohibiting him from permitting an unlicensed employee to sell drugs. We held that the word "permit" included an element of assent, and, where the pharmacist had no knowledge of the offense, he was not liable.

The mere presence of persons of immoral character has been held not to violate a statute prohibiting the use of a bar as a place "to which people resort for purposes which are injurious to the public morals," there being nothing unlawful about permitting such persons to patronize bars and restaurants in the absence of proof that they committed violations on the premises.[15] Nor is a single act of solicitation enough to justify a license revocation under a statute which prohibits the licensee from permitting the premises to become disorderly.[16] In a prosecution under a child labor law for "permitting" work in a particular industry, Mr. Justice Cardozo stated that an employer had a duty to inquire into the conditions prevailing in his business; that the statute implied knowledge of the violation or the opportunity through reasonable diligence to acquire knowledge; and that there was no safety in ignorance "if proper inquiry would avail."[17]

A recent California case involved the revocation of a license for "permitting" the premises to be used as a place to which people resorted for purposes injurious to the public morals. The court held that the word "permit" implied no affirmative act and no intent, but mere passivity, or

---

[15]Stoumen v. Reilly, 37 Cal. (2d) 713, 716, 234 P. (2d) 969, 971.

[16]Matter of Migliaccio v. O'Connell, 307 N. Y. 566, 122 N. E. (2d) 914.

[17]People ex rel. Price v. Sheffield Farms-Slawson-Decker Co. 225 N. Y. 25, 30, 121 N. E. 474, 476.

an abstaining from preventive action.[18] In a New Jersey action to revoke a license for permitting premises to be used by prostitutes for solicitation, the owner defended on the ground there had been no direct proof that the activities occurred with his knowledge and consent. However, the court sustained a finding which noted "We would have to be naive to believe that these women could have solicited on the premises without anyone connected with the management learning of it."[19] To the same effect is our opinion in State v. Rogers, 145 Minn. 303, 306, 177 N. W. 358, 359. There we held that in the absence of direct evidence that defendant had knowledge of immoral practices on his premises, the illicit commerce was indulged in so openly and for such a length of time that defendant must have known his hotel was being used as a house of ill fame. Nor can a licensee plead ignorance by delegating his responsibilities to an employee. State v. Sobelman, 199 Minn. 232, 235, 271 N. W. 484, 485. Under the statute, "Every licensee shall be responsible for the conduct of his place of business and for conditions of sobriety and order therein." § 340.14, subd. 2.

We therefore conclude that where, as here, the evidence discloses that the licensee knew prostitutes were frequenting his establishment, and numerous convictions resulted from acts of prostitution solicited on his premises, he is charged with knowledge of such activities and further proof is not required to sustain the revocation.

Affirmed.

THOMAS GALLAGHER, JUSTICE (dissenting).

I concur with the majority that the notice under which plaintiff was required to appear before the committee for the purpose of defending his right to continue operations under his license was entirely inadequate and that plaintiff at no time waived his rights with respect to its sufficiency. However, I disagree with the majority's conclusion that notwithstanding this, because someone had previously "discussed" with him certain

---

[18]Swegle v. State Board of Equalization, 125 Cal. App. (2d) 432, 270 P. (2d) 518.

[19]Benedetti v. Board of Commrs. 35 N. J. Super. 30, 34, 113 A. (2d) 44, 46.

complaints which were nowhere specified in the notice, his constitutional right to due process had not been denied.

Further, I cannot adhere to a concept of due process which would permit hearsay evidence to stand as the main support for findings which in effect will cause plaintiff the loss of an investment of the estimated value of $200,000. Even Minn. St. 600.13, under which the majority hold such evidence is admissible, specifically provides that it shall be prima facie evidence only as to matter contained in the documents referred to therein. It would seem logically to be implied from such language that plaintiff should have been accorded his constitutional right to confront the makers of such reports and to subject them to cross-examination under oath in an effort to overcome the prima facie effect of such evidence.

The majority hold that because plaintiff knew that a number of prostitutes were among his customers that this was sufficient to establish his violation of § 340.14, subd. 2, even though, as defendant concedes, he would have no more right to eject them from his premises than would the owner of any retail establishment which they might choose to patronize. It seems here that plaintiff is made the victim of circumstances he could not control. The recent influx into the city of great numbers of prostitutes from Chicago, Omaha, and Kansas City is known to defendant, and the diligent and conscientious effort of its police department to eliminate them is to be commended. Plaintiff is vested with no legal authority to prevent their coming into his establishment, which by law is open to all adults of their or other racial origins. There is no evidence whatever that plaintiff was aware of the occasions, testified to by members of the police morals squad, when the patrons of his bar turned their efforts toward solicitation of assignments with other customers. The record establishes that before the influx referred to above, plaintiff's operation of his establishment had been satisfactory, and that on all occasions he cooperated with the police in an effort to maintain a lawful place of business for his patrons.

I do not feel that he should be penalized to the extent of the loss of his property because of an evil which he did not create, which he did not foster or encourage, and which he had no legal authority to con-

trol or eliminate. It is almost certain that even though plaintiff's place be closed, the evil will continue to exist and that similar problems will arise in other sections of the city for so long as economic conditions and human feelings foreclose legitimate employment opportunities to large segments of our population.