(89 App. Div. 296.)

PEOPLE ex rel. DEVANEY v. GREENE, Police Commissioner.

(Supreme Court, Appellate Division, Second Department. December 30, 1903.)

1. MUNICIPAL CORPORATIONS—CIVIL SERVICE—POLICE DEPARTMENT—DISCHARGE
OF OFFICER.

A rule of the police department to the effect that no erasures are to
be made in any books or documents connected with the duties of the de-
partment, but errors are to be corrected by drawing red lines through
them and substituting corrections above, relates to material matters, in
order to prevent the changing of the records in accordance with subse-
quent purposes, and not to mere incidental errors in the making of the
original record, such as the erasure of an entry made on the wrong line

of the blotter, and entering it on the line above, so as to make the blotter correct in form.

2. SAME—EVIDENCE—SUFFICIENCY.

    On certiorari to review the action of the police commissioner in dismissing relator from the office of police captain, under New York City Charter (Laws 1901, p. 129, c. 466), giving such commissioner power to punish or dismiss police officers for violation of rules, etc., evidence examined, and *held* insufficient to justify the dismissal of relator, who was a man of good record having a long term of service, under a rule of the department requiring a captain to personally enter his presence at the station house on the blotter before retiring for rest.

Certiorari by the people, on the relation of Michael Devaney, against Francis V. Greene, police commissioner of the city of New York, to review the action of said commissioner in dismissing relator as a police captain in said city. Reversed.

Argued before GOODRICH, P. J., and BARTLETT, JENKS, WOODWARD, and HIRSCHBERG, JJ.

Franklin Bien (Josiah Cauter, on the brief), for relator.

Walter S. Brewster (James McKeon, on the brief), for respondent.

WOODWARD, J. First Deputy Commissioner Fred H. E. Epstein, of the police department of the city of New York, on the 2d day of February, 1903, filed written charges against the relator, alleging (1) neglect of duty, and (2) conduct unbecoming an officer. The relator had been a member of the police force for a period of about 21 years, and for 2 years a captain of police in charge of the Seventy-First Precinct, and, so far as the record before us discloses, he had never been charged with any violation of police rules or regulations, or with any conduct unbecoming his office, during all of these years. The charges were based upon 23 specifications, the first 19 of which alleged that the relator had violated paragraph "e" of rule 5 of the police department by failing to record in his own handwriting certain entries in the blotter of the Seventy-First Precinct, of which he was in charge, but did permit or procure some person other than himself to make the entries. The next three specifications allege that the relator violated paragraph "e" of rule 48 of the department, in making or permitting to be made erasures in the blotter of the Seventy-First Precinct, of which he was in charge. And the last specification, as to which the relator is found not guilty, alleges matters in relation to the condition of a buggy and harness belonging to the department; but it does not appear to be necessary to consider this feature. Upon the trial the relator was found guilty of the charges under the first and second groups of specifications, and an order dismissing him from the force was entered. The relator urges that the conviction is not sustained by the evidence, and that the same should be reversed and he be reinstated in his position in the department.

In relation to the alleged violations of the provisions of paragraph "e" of rule 48, we are clearly of the opinion that the evidence does not warrant a conviction. This rule provides:

"No erasures are to be made in any of the books, reports or documents connected with the duties of the police department. If any error be discov-

ered in such books, reports or documents, it is to be altered and corrected by drawing a red ink line neatly across the entry and substituting the correction above it."

This was obviously intended to relate to material matters, and was designed to prevent the changing of the records as once made to conform to the subsequent purposes of those in charge of the books, and not to mere incidental errors in the making of the original record, such as were obviously involved in the alleged erasures disclosed by the testimony of an expert. For instance, in reference to the entry of November 15, at 6 p. m., there appears to have been an error in writing the words "left for supper and patrol" upon the wrong line of the blotter, and this was erased and the entry made upon the line above, so far as appears, with no other purpose than to make the blotter correct in form. So far as the expert, upon whose evidence the whole case rests substantially, is able to say, the words erased are the same as those which were placed upon the correct line of the blotter, and it would be going a long way to hold the relator guilty of a violation of the rule cited in merely correcting the form of an entry.

In respect to the other alleged erasures, they appear either to have been made with red ink as required by the rule, or to be of such a trivial nature that it cannot be held that substantial justice has been done a man of good standing in the department when he is dismissed from service upon such technical violations of incidental rules. The evidence would not be sufficient to support the verdict of a jury, and it ought not to stand in a case of this character. People ex rel. Reardon v. Partridge, 86 App. Div. 310, 83 N. Y. Supp. 705.

The remaining specifications relate to the entries in the blotter, which are alleged not to have been made in the handwriting of the relator, as required by the provisions of paragraph "e" of rule 5 of the department. This provision of the rules and regulations says:

"The captain is at all times in command when in the station house, except when he has retired for rest; before doing which he will enter on the blotter, in his own handwriting, 'Capt. ———, in reserve.'"

It is alleged that on 18 different occasions the relator, who was a police captain, has procured or permitted some one other than himself to make these entries upon the blotter, and the evidence to support these charges is furnished by an expert hired by the department for that purpose. This expert testified that the entries were not made by the relator, and as to some of them, over the objections and exceptions of the relator, he was permitted to testify that they were made in the handwriting of Sergt. Hughes, but the latter swears positively that they were not made by him, and the whole case is lacking in that degree of certainty which appeals to the judicial mind where the rights of individuals are at stake. The relator, it is true, was present and did not take the stand to deny the matters alleged against him, but it may be that, under the advice of counsel, he did not think it worth while to controvert evidence which at best was far from conclusive. By section 302 of the Revised Greater New York

Charter (Laws 1901, p. 129, c. 466) the police commissioner is authorized, upon conviction of "any criminal offense, or neglect of duty, violation of rules, or neglect or disobedience of orders, or absence without leave, or any conduct injurious to the public peace or welfare, or immoral conduct or conduct unbecoming an officer, or any breach of discipline, to punish the offending party by reprimand, forfeiting and withholding pay for a specified time, suspension, without pay during such suspension, or by dismissal from the force." The relator may have been willing to rest his case upon the not unreasonable assumption that he would be subject only to the lesser penalties, if found guilty. While it is true that the statute vests the discretion in the police commissioner of determining the punishment, it is hardly possible that the Legislature intended that the extreme penalty should under ordinary circumstances be visited upon a police officer for a mere technical violation of a rule which is not shown to have prejudiced any rights of the public or interfered with the proper discipline of the department. The mere fact that the relator refused or neglected to take the stand under the circumstances detailed in the record ought not to subject him to any presumption of guilt beyond the matters which are clearly established by competent evidence, and these would hardly justify the extreme penalty. We think the evidence wholly fails to support the conviction under the specifications relating to the alleged erasures; it is most unsatisfactory in reference to those which relate to the entries in the blotter in the handwriting of the relator; and, if the latter might be held to be sufficient, we cannot assume that for these technical violations, in the case of a man with a good record during a long term of service, the extreme penalty would be imposed.

We are of opinion that considerations of justice demand that the determination be annulled, with costs. All concur; BARTLETT and JENKS, JJ., in result.