(117 App. Div. 438)

PEOPLE ex rel. GANNON v. McADOO, Police Com'r.

(Supreme Court, Appellate Division, First Department. February 8, 1907.)

1. EVIDENCE—RELEVANCY.

Where relator, a policeman, was charged with having threatened another patrolman over the telephone, conflicting evidence relating to an altercation on the day previous between certain policemen, including the one alleged to have been threatened, and relator's brother, having no tendency to prove the threats charged, was irrelevant.

2. MUNICIPAL CORPORATIONS — POLICE OFFICERS — CHARGES — ABSENCE FROM POST.

The fact that a policeman, when informed that his brother had suffered serious injuries at the hands of other members of the police force, absented himself for three minutes from his post by going to the nearest telephone and communicating with a superior officer, to the end that the persons guilty of inflicting the injuries might be apprehended, was not such a violation of duty or breach of discipline as justified his dismissal from the force.

3. SAME—REPORT OF ABSENCE.

Relator, a policeman, on being relieved of duty at night, having been temporarily off his post in the daytime, was confronted with an order to present himself "forthwith" to the inspector, whereupon he immediately started to do so without first reporting his absence from his post. Held, that such failure did not constitute a violation of rule 46c, requiring such report to be made "at the expiration of patrol duty."

4. SAME—OBEDIENCE OF ORDERS—TIME.

Relator, a policeman, who had been on the sick list, voluntarily asked to be put back on the force in view of an increasing demand for patrolmen during a strike. When he reported in the evening, he was directed to go from the station house to the office of his inspector and present himself forthwith before that officer. Having had nothing to eat during the day, relator stopped in a bakery on the way for lunch, and arrived in less than an hour. Two other officers subsequently detailed to go over the route took 25 minutes in one instance and 38 in another. Held, that relator was not guilty of failing to present himself with reasonable diligence before his inspector.

5. SAME—CONCEALMENT OF IDENTITY.

Relator, a patrolman, while on duty, called up headquarters and stated to the telephone operator that he was a patrolman, giving his name and address. The operator stated that he would call the inspector, to whom relator disclosed the alleged commission of an offense without again disclosing the fact that he was a patrolman. Held that, in the absence of a rule requiring relator to disclose such fact, he was not guilty of willfully concealing his identity as a patrolman in his conversation with the inspector.

6. SAME—THREATS.

Where relator had been a member of the police department for upwards of 15 years, and had a good record, the fact that he was charged with threatening another patrolman in a conversation over the telephone, which he denied, and which charge was supported only by evidence directly conflicting, was insufficient to justify his dismissal from the force.

Certiorari by the people, on relation of Michael J. Gannon, against William McAdoo, as police commissioner of the city of New York, to

review a determination of the police commissioner dismissing relator from the police force. Writ sustained. Proceedings annulled.

Argued before PATTERSON, P. J., and McLAUGHLIN, INGRAHAM, HOUGHTON, and LAMBERT, JJ.

Joseph S. Frank, for relator.
Theodore Connoly, for respondent.

McLAUGHLIN, J. Michael J. Gannon, the relator, who had been a member of the police force of the city of New York for upwards of 15 years, was charged with neglect of duty, conduct unbecoming an officer, and violation of the rules of the police department. The specifications were in substance: (1) That between 9:30 and 10:30 a. m. of March 11, 1905, the relator was absent from his post and in the hallway leading to a liquor store at No. 4154 Broadway during his tour of patrol duty, which was from 8 a. m. to 4 p. m.; (2) that at the time of such absence the relator willfully concealed his identity as a patrolman in a conversation over the telephone with Inspector Brooks; (3) that between the said hours of 9:30 and 10:30 a. m. the relator threatened patrolman Powers by stating to him, over the telephone, "When I run across you, you can expect what you will get from me;" (4) that, at the expiration of his tour of patrol duty at 4:40 p. m. on the day named, the relator neglected to report his absence from post, in violation of rule 46c; (5) that, having been directed at the above hour to report forthwith at the office of Inspector Cross, the relator neglected to report as ordered, and failed to do so until 6:03 p. m.; (6) that, on being asked by Inspector Cross his reason for not explaining to Inspector Brooks in his conversation with him over the telephone that he was a patrolman, the relator falsely stated that he did inform Inspector Brooks of that fact. The relator was found guilty of the charges and of each specification, after a trial before the third deputy police commissioner, who thereupon recommended his dismissal from the police force. The findings were approved by the police commissioner, and the relator dismissed from the department. He instituted this proceeding by writ of certiorari, for the purpose of having the determination of the commissioner reviewed.

The record is quite voluminous, and, while the evidence as to what took place the day preceding the relator's alleged breach of discipline is conflicting, there is little or no conflict, except as to the third specification. On the morning of March 11, 1905, while the relator was performing his patrol duty, a boy named Cunningham informed him that the previous afternoon he had witnessed a number of policemen indulging in target practice, the bullets from their pistols falling in the neighborhood of certain work which Patrick J. Gannon (relator's brother) was superintending; that, when the latter requested the officers to desist, one of their number assaulted him, fracturing his skull and breaking his nose; that the injured man was then in the J. Hood Wright Hospital. On hearing this story, the relator went to the nearest public telephone, at No. 4154 Broadway, and called up police headquarters, telling the operator that he was "Michael J. Gannon, patrolman attached to the Thirty-Third Precinct," and repeated the

story told him by the boy. The operator said, "Hold on, I will give you the inspector," which he did and the relator then told the story to Inspector Brooks, giving his name and address in response to the latter's inquiry, but not again stating that he was a patrolman. On returning to the station house, situate at 152d street and Amsterdam avenue, at the expiration of his patrol duty, the relator was immediately directed to report to Inspector Cross, at the Twenty-Ninth Precinct Station, 104th street near Third avenue, and at once left to obey the order; the time then being 4:46 p. m. On the way he stopped for five or six minutes at a bakery to get something to eat, having been without food since 7 o'clock in the morning, and arrived at the station house at 12 minutes of 6; but, Inspector Cross being engaged, he was unable to see him until 6:03. In reply to inquiries made by Inspector Cross, the relator stated that he had conversed with Inspector Brooks over the telephone, and had informed him that he was a patrolman; that he had not at that time reported his absence from his post, but that he had intended to do so as soon as he returned to the station house, which he did at 8 o'clock that evening.

In regard to the third specification, the relator denied having used the language complained of, or having telephoned patrolman Powers at all, while the specification is sustained by the testimony of Powers and another policeman. It is upon evidence establishing substantially the above facts that the finding of guilty is based. A portion of the testimony taken at the trial related to what took place on the 10th of March, the day preceding the one on which complaint was made of relator's action. This evidence on the part of the relator tends to show, through the testimony of the boy Cunningham, two other boys, and three adult citizens, that during the afternoon of March 10th some 33 or 40 policemen were shooting at a mark in the neighborhood of a railroad tower house in a lot between 147th and 149th streets, where they were accustomed to gather during the continuance of a strike then in progress on the Subway; that the laborers employed by the relator's brother, working in that immediate vicinity, refused to continue their work unless the firing ceased; that the relator's brother remonstrated with the policemen and endeavored to get them to stop firing; that in doing this he was assaulted by a patrolman named Powers, arrested, taken to the station house, and subsequently admitted to bail; that of these facts the relator had no knowledge until the following morning, when he was informed of them by Cunningham, who had been sent by an employé of his brother to tell the relator. The testimony given by several policemen in behalf of the respondent was to the effect that there was no shooting as alleged; that the relator's brother was arrested for attempting to break through the police lines; that he became intoxicated after he was bailed out, and sustained his injuries that evening by falling down the stairs of a saloon; and that the relator was informed of his injuries shortly after midnight of the 10th. This evidence is conflicting, but it is of no importance because it neither tends to prove nor disprove the charges made against the relator, and of which he was found guilty.

The first specification is that the relator was absent from his post for some time between 9:30 and 10:30 o'clock on the 11th of March. The fact is not disputed that he absented himself from his post for three minutes by reason of information given to him that his brother was in a hospital, suffering from a broken nose and fractured skull. It is true there is some evidence that he had been previously informed of his brother's injury, but such evidence is unreliable and of the most uncertain character. And, besides, the relator's action, when informed by the boy Cunningham of the injury to his brother, would seem to indicate that he did not prior thereto have such information. The fact, therefore, that the relator, when informed of the serious injuries to his brother, absented himself for three minutes from his post, by going to the nearest telephone and communicating with a superior officer, to the end that the person who had inflicted the injuries might be apprehended, is not such a violation of duty or breach of discipline as to justify his dismissal from the force.

It a patrolman has information which he deems reliable that a serious crime has been committed, it is his duty to apprehend the criminal, or, if he cannot do so himself, to communicate with some other officer who can. In this connection, the fourth specification should be considered, and that is that the relator did not report his absence from post at the expiration of patrol duty. But at that time he was confronted with an order to present himself forthwith to Inspector Cross, and it might be well to here consider the fifth specification, which is that the relator did not report forthwith, as ordered, or until 6:03. The relator is thus blamed for not having delayed in the station house to perform one duty before carrying out another order, and at the same time criticised for having delayed at all in obedience to that order.

Rule 46c should be fairly and reasonably construed, having in view, of course, the object sought to be accomplished by it. Can it fairly be said that a patrolman has violated that rule because he has not entered in the proper book his absence from post, when, as soon as he enters the station house, he is confronted by an order from his superior officer to forthwith report at another place? Is it unreasonable if an officer receiving such an order delays making the entry required by rule 46c until he has complied with the order? I think not. And in this connection it is to be borne in mind that rule 46c does not specify any time when the entry shall be made, though a fair construction of it doubtless requires that the patrolman shall make the entry within a reasonable time after he gets to the station house.

As to the fifth specification, that the relator did not forthwith report to Inspector Cross as directed, the evidence shows that it took the relator a few minutes less than an hour to go from the station house at 152d street and Amsterdam avenue to the station house at 104th street and Third avenue, and that he stopped on the way for a glass of milk and a roll, having had nothing to eat since 7 o'clock in the morning. But it was not unreasonable, under the circumstances, that he should stop long enough to get a glass of milk and a roll. It would be subjecting an officer to unreasonable discipline to dismiss him from the force, if, under the facts here disclosed, he should drink a glass of milk and eat a roll before responding to an order similar to the one in ques-

tion. It was not unreasonable, in view of the fact that when the strike referred to commenced the relator was on the sick list, and he voluntarily asked to be put back on the force, in view of the increased demand for patrolmen, and that he had eaten nothing since morning. Besides, the evidence shows that he took a car immediately thereafter, and that the car was delayed on the way. That there was no great delay in the relator's getting to the station house is evidenced by the fact that the two officers whom Inspector Cross detailed to go over the route took 25 minutes in one instance and 38 in another. The difference in the time required on these two occasions indicates, as clearly as anything can, the injustice of dismissing a man from the force who has satisfactorily performed his duties for 15 years, because he took nearly an hour.

As to the second specification, that the relator did not disclose, when talking with Inspector Brooks, that he was a patrolman, a complete answer to this is that there was no rule which required him to disclose that fact. But the evidence fairly shows that he did disclose it. It is undisputed that he stated to the telephone operator at headquarters that he was a patrolman, giving his name and address, and he had a right to assume, when he had stated that fact to the operator, and the operator had announced he would call up Inspector Brooks, that the information which he had disclosed as to his identity had been given to Inspector Brooks, and it was unnecessary for him to repeat it. Besides, what possible motive could he have had in concealing the fact of his connection with the police force? However, if he did so, he violated no rule of the department; nor has any one sustained any injury by reason of it.

As to the sixth specification, that the relator falsely stated to Inspector Cross that he did tell Inspector Brooks he was a patrolman, it cannot, for the reasons already given, be considered a false statement, inasmuch as he had a right to assume that the operator had told Inspector Brooks who wanted to talk with him.

The third specification alone presents the only one in which there is a direct conflict in the testimony. This charge is only sustained by the testimony of Officer Powers, corroborated in a slight degree by Officer Stevens, and it must be remembered that Powers is the officer who arrested, and it is claimed assaulted, relator's brother, and, besides, Officer Stevens contradicts Powers' testimony in several material respects. The relator denied that he used the language attributed to him, and he is corroborated by at least one witness. The evidence does not satisfactorily establish the charge, and, if it did, it is too trivial in its nature to justify the severe punishment here imposed. It is unquestionably true that the statute vests the discretion in the police commissioner, where a member of the force has been found guilty of charges preferred against him, of determining the punishment to be inflicted, but the charge must be substantial and fairly sustained by evidence. It cannot be that the Legislature intended, when lodging this discretion with the police commissioner, that the extreme penalty should be visited upon a police officer for what at most is a mere technical violation of a rule which is not shown to have prejudiced any right of the department. People ex rel. Devaney v. Greene, 89 App. Div. 296, 85

N. Y. Supp. 866. The facts here proved do not establish a conscious violation of any rule or the omission of any duty on the part of the relator, or any intent on his part to deceive his superior officer, or any one else, and it cannot be that a conviction of neglect of duty, conduct unbecoming an officer, and violation of the rules of the department can possibly be sustained upon the evidence set out in this record without doing manifest injustice. People ex rel. Reardon v. Partridge, 86 App. Div. 313, 83 N. Y. Supp. 705; People ex rel. Hogan v. French et al., 119 N. Y. 493, 23 N. E. 1058.

Here, as already indicated, this officer had been a member of the police department for upwards of 15 years. His record, so far as appears, is good, and, if appeals to this court are to be anything more than a form, I do not see how it can be said, upon this record, that the dismissal of the relator can be sustained.

I am of the opinion that the writ should be sustained, the proceedings annulled, and the relator reinstated, with $50 costs and disbursements. All concur.