PEOPLE ex rel. UNGER v. BINGHAM, Police Com'r.

(Supreme Court, Appellate Division, Second Department. November 19, 1909.)

Certiorari by the People, on the relation of William J. Unger, against Theodore A. Bingham, as Police Commissioner of the City of New York, to review the determination of the Commissioner in dismissing relator from the police force of the City of New York. Determination confirmed.

Argued before HIRSCHBERG, P. J., and WOODWARD, BURR, RICH, and MILLER, JJ.

Louis J. Grant and Jacob Rouss, for relator.

James D. Bell, for respondent.

PER CURIAM. Determination confirmed with costs.

WOODWARD, J. (dissenting). The relator was charged with neglect of duty, in that "said Patrolman William J. Unger, shield No. 1,285, having been assigned to patrol night posts Nos. 20 and 21 (Pearl street from Pine street to Maiden Lane, and Pearl street from Maiden Lane to Fulton street, Fletcher street from Pearl to Water street), was absent from said posts, and when seen at 7:07 a. m., June 9, 1908, was standing in front of bar of licensed liquor saloon at No. 168 Pearl street. This during his tour of patrol duty from 2 a. m. to 8 a. m., June 9, 1908"; and, having been convicted under this charge, the relator has been removed from office. The evidence against the relator was furnished by Sergeant William J. Colyer, who testified that at about 5 minutes past 7 o'clock on the morning of the 9th of June he saw relator at the corner of Pine street; that, "while I was looking up the street towards him, he turned and walked across the street. I was about to walk down Wall street, when I saw him give a searching look behind him up Pine street." The witness explained that he meant by a searching look that the relator was perhaps looking for somebody, and continued:

"I therefore watched him, and saw that he crossed in a diagonal manner that would take him off his post. As soon as he disappeared, I walked up a block to the corner of Pine street, and I saw him through the window in the saloon. * * * I walked across, into the saloon, right up behind him, and asked what he was doing. He turned around, and he was rather sur-

·prised to see me. He could not speak for a moment, I guess. He said, 'I was called in,' and 'he turned to the bartender and said, 'What do you want of me?' The bartender did not answer. I gave him time enough, plenty of time to answer, if he would. He made no answer, so I told him: 'Apparently, he did not call you in. Go out on post.' He came outside, and he said again that he had been called in, and I said: 'You had better go out and patrol your post now. I shall make a complaint.' "

The relator admitted that he was found in the barroom, but insisted that he was called in by some one in the barroom, and that he found when he got in that they wanted to refer some unimportant question about street numbers to him, and no one disputes him upon this point. The complaining witness says there were three other persons in the barroom, and he knew that he intended making a complaint; for° he told the relator so at the time, yet no effort is made to produce any witness to contradict the relator. The relator did not say that the bartender called him in, and the bartender's silence did not tend to show .that the relator was not called in by some of the men who were concededly present at the time. Indeed, the relator testifies that it was a "citizen" who called him in, evidently intending to distinguish the person from the bartender, and it remains uncontradicted, therefore, that the relator, a police officer at the corner of a street, at the request of a citizen entered this barroom, which was diagonally across the street from where he was supposed to be upon his beat. For this he has been convicted and punished by removal from the force, the extreme limit of the commissioner's power.

No one suggests that the relator entered this barroom for the purpose of taking a drink. There is no evidence whatever that anything improper was taking place in the saloon, and the whole sum and substance of the offending, as it appears from the evidence, is that the relator had passed out of the geographical limits of his beat by a few feet, though within plain sight of the territory which was within his jurisdiction, and had entered a saloon, because he was requested by a citizen so to do. The saloon is a lawful place. The offense, in law, is not greater for entering a saloon than for entering a dry goods store, and it would require quite a stretch of construction to make it a serious offense for a police officer to step outside the geographical limits of his beat to respond to a call on the opposite side of the street, in plain view of his territory. Our attention is not called to any such rule. I do not believe there is any rule which forbids a policeman going outside of his beat when called, and especially where he is not called upon to go out of sight of the territory assigned to him, and there is no contradiction of the relator on the question of his having been called. The fact that he was not called to discharge any duty relating to his position as a police officer is not important. He could not know what he was called for until he had responded, and he does not appear to have had any other motive than the one assigned; for there is no suggestion that the bartender was in the act of serving drinks, or that anything of the kind had been mentioned by any one. This occurred at or about 7 o'clock in the morning. At 5 minutes past 7 the relator was concededly upon his post, discharging his duty. At 7 minutes past, as the charge reads, he had abandoned his post, and the relator

says he crossed the corner and entered the saloon at the request of a citizen.

Conceding the truth of his statement, and it was in the power of the prosecuting witness to produce the witnesses if it was not true (the claim having been made in the presence of all of them), where is the neglect of duty which warrants the drastic treatment which has been accorded the relator? As we remarked in People ex rel. Devaney v. Greene, 89 App. Div. 296, 299, 85 N. Y. Supp. 866, 869:

"While it is true that the statute vests the discretion in the police commissioner of determining the punishment, it is hardly possible that the Legislature intended that the extreme penalty should under ordinary circumstances be visited upon a police officer for a mere technical violation of a rule which is not shown to have prejudiced any rights of the public or interfered with the proper discipline of the department."

And I am clearly of opinion that the evidence before the commissioner did not warrant the conclusion that the relator had been guilty of any act meriting the severity of punishment which has been meted out to him.

The determination of the commissioner should be annulled, and the relator restored to his position upon the police force.