In the Matter of STANWOOD UNITED, INC., Petitioner, against JOHN F. O'CONNELL et al., Constituting the State Liquor Authority, Respondents.

First Department, December 15, 1953.

*Jack Reinstein* of counsel (*William I. Cohen,* attorney), for petitioner.

*Robert W. Corcoran* of counsel (*Emanuel D. Black* with him on the brief; *Alvin McKinley Sylvester,* attorney), for respondents.

COHN, J. The State Liquor Authority has revoked the restaurant liquor license of petitioner upon a finding that he had permitted the licensed premises to become disorderly in violation of subdivision 6 of section 106 of the Alcoholic Beverage Control Law, inadvertently stated as a violation of subdivision 1, by permitting homosexuals to loiter on the premises and in allowing solicitation of male patrons for indecent acts.

According to the testimony of the president of petitioner, the premises in question, located at the intersection of two very busy thoroughfares in the borough of Manhattan, is primarily a restaurant. It accommodates 350 to 400 persons, and serves a great number of persons daily; there is clear visibility from all sides through large windows that front on Broadway and on the side street; the volume of business done is $55,000 per month, of which five-sixths represents sale of food — the balance being for alcoholic beverages. Petitioner has held liquor licenses for about twelve years and pays an annual rental of $38,000; the lease on the premises has nine more years to run and petitioner has an investment in the business of approximately a quarter of a million dollars.

The only witness called to prove the charge was a police officer who testified as follows: he visited the premises on but one occasion, to wit: at 3:15 A.M. on February 4, 1953; he saw about thirty people at the bar, two bartenders in attendance and a third man who was acting as manager; he observed about fifteen males who acted in a " female way " gathered in groups of three or four along the bar; while he was standing there one of the fellows came up to him and in an ordinary conversational

tone made an indecent proposal; the others " were telling jokes or stories " and one or two of them would grab each other indecently; and the manager was going up and down the bar telling the people to drink or to leave the premises. The officer placed under arrest the person who had solicited him. The latter was convicted in the City Magistrate's Court on a plea of guilty to a charge of degeneracy (Penal Law, § 722, subd. 8) and received a suspended sentence.

Neither the licensee nor the manager knew anything about the arrest until some three months later when the present charge was served on the licensee by the State Liquor Authority. The officer who testified admitted that the advances made by the person he arrested were not open and visible; that the improper actions allegedly made by others might have been seen if anyone was looking in that direction. There was no proof, however, that the manager or the bartenders had any knowledge of alleged indecent acts committed by anyone. This officer's visit lasted for about twenty-five minutes and he did not again inspect the premises. He was accompanied by another officer who, singularly enough, was not called to testify.

Upon the testimony of the one officer relative to observations made by him on the single occasion, petitioner has lost his license. No subsequent investigations were ever made by any police officers or by investigators employed by the State Liquor Authority.

There is not the slightest indication that the premises were conducted in a disorderly manner at any time before or after this one arrest. No proof was adduced to show that petitioner on this occasion, or at any other time, permitted the licensed premises to become disorderly or that with the exercise of reasonable diligence he could have prevented the occurrence complained of. Quite to the contrary, a police captain in charge of the 20th Precinct, who had supervisory jurisdiction over these premises, testified that he visited them on many occasions; that he never had any complaint about the countenancing of disorderly persons there; that he himself had dined in the restaurant at numerous times; that it was never brought to his knowledge that the premises were of a type where undesirables congregate or loiter; that the place was one of the largest in the neighborhood and that he never received a report that it was a gathering place for degenerates. A police sergeant connected with the local precinct whose duty it was to supervise this restaurant gave similar testimony.

Suffering premises to become disorderly means something more than a mere happening on one occasion. A finding that the management knowingly allowed such things to occur and to continue would have to be bottomed upon a showing either of more than a single event or the showing of a demonstrated attitude toward that happening which indicated acquiescence (*Tenement House Dept.* v. *McDevitt,* 215 N. Y. 160, 164; *Matter of Abrams* v. *Bruckman,* 263 App. Div. 593, 594; *Matter of Giovatto* v. *O'Connell,* 278 App. Div. 371, 372). There is no such showing here.

Without a doubt the State Liquor Authority has a most important function to perform in supervising the conduct of premises where the sale of liquor is authorized. It is in the public interest to prevent the kind of disorderly conduct charged here. The Authority should be supported in its efforts to revoke liquor licenses to all persons or corporations who suffer or knowingly permit such misconduct to exist or to continue. However, the power of the Authority should be exercised only where there is substantial evidence to sustain such a serious charge.

Petitioner was not an insurer of the character of the persons who patronize its business. Under the law it had no authority to take affirmative action to eject persons whom it might suspect as objectionable without risking a possible violation of sections 40 and 41 of the Civil Rights Law. Such conduct on its part might well subject it to both civil and criminal prosecution if there was no obvious disorder.

In view of the excellent reputation of the licensed premises running over a period of many years, the large investment which petitioner has in the business and the other circumstances, the testimony of the one police officer concerning his observation during a twenty-five-minute visit and concerning the single incident involved, does not furnish a substantial basis for a determination that the licensee knew or, in the exercise of reasonable diligence, should have known of the disorderly activities on that one occasion. In the circumstances, a violation of subdivision 6 of section 106 of the Alcoholic Beverage Control Law was not established and petitioner's license should not have been revoked (*Matter of Konopka* v. *Bruckman,* 290 N. Y. 777; *Matter of Mihale* v. *O'Connell,* 279 App. Div. 651, affd. 303 N. Y. 874; *Matter of Arnold Reuben, Inc.* v. *State Liq. Authority,* 268 App. Div. 981, affd. 294 N. Y. 730; *Matter of Toyos* v. *Bruckman,* 266 App. Div. 28, appeal dismissed 291 N. Y. 745).

The determination should be annulled.

PECK, P. J., DORE, CALLAHAN and BERGAN, JJ., concur.

Determination unanimously annulled, with $50 costs and disbursements to the petitioner.

Republished decision, December 23, 1953.

Determination unanimously annulled, with $50 costs and disbursements to the petitioner and the State Liquor Authority directed to forthwith restore the license certificate to the petitioner. Opinion by COHN, J. Order filed. (Order of December 15, 1953, vacated).

Present — PECK, P. J., DORE, COHN, CALLAHAN and BERGAN, JJ.