In the Matter of JOHN GUERRA, Petitioner, *v.* NEW YORK STATE LIQUOR AUTHORITY, Respondent.

Supreme Court, Special Term, Erie County, August 6, 1962.

*Buscaglia & Buscaglia* (*Christy A. Buscaglia* of counsel), for petitioner. *Hyman Amsel* (*Richard R. Jenczka* of counsel), for respondent.

MICHAEL CATALANO, J. The petitioner requests this court to annul the respondent's determination of June 13, 1962, canceling petitioner's restaurant liquor license (48 RL 10448) with full bond penalty in the sum of $500.

On February 27, 1961, the respondent issued this license to the petitioner, who conducted a business known as Ramp Bar & Restaurant at 161 Ellicott Street, Buffalo, New York.

On May 8, 1962, a notice of hearing was served upon the petitioner to " revoke, cancel or suspend this license upon three charges involving violations of Section 106, subdivision 6, of the Alcoholic Beverage Control Law by permitting the licensed premises to become disorderly whereby females solicited male patrons for immoral purposes on March 8, 25 and 27, 1962." Attached to this notice was a paper entitled " Important " and stating, in part: " If you do not wish to contest the charges, you can plead ' No Contest.' By doing so you will receive a lesser penalty than if a trial were held and a finding of ' guilty ' made. However, once you plead ' Not guilty ' and a date is set for a hearing, no further opportunity to obtain a lesser penalty will be given." This attached paper was issued by: " Alfred de F. Licato, Deputy Commissioner, Head Hearing Commissioner."

On May 15, 1962, the petitioner appeared before a " pleading officer," who was an assistant counsel of the respondent. Relying upon the Deputy Commissioner's statement, the petitioner appeared without a lawyer and believing he would receive a " *lesser penalty*," he pleaded " No contest."

The pleading officer made these findings of fact: " Patrolman Michael Ryan, while on the premises on March 8, 1962, was solicited by a female for immoral purposes. Patrolman W. Horosh, while on the premises on March 25, 1962, was solicited by a female for immoral purposes. Th officer determined that the bartender knew of the immoral activities of the female. Patrolman J. Pustulka and L. Schepperly visited the premises on March 27, 1962. They engaged in a conversation with a female. * * * This female then solicited Officer Pustulka for immoral purposes. She also procured another female, who was in the premises, for the purpose of engaging in prostitution with Officer Schepperly." He also found: " History: Current license was issued 2/27/61. There has been no adverse criticism. Licensee had no previous license history."

The petitioner made a statement to the pleading officer to the effect: That one time he recognized a police officer who came in with another man and asked about some girls; that the petitioner did not know what they were talking about; that the officers went to the bar and talked to the women; that the two police officers walked out and 10 or 15 minutes later, the ladies walked out; that on another night, after the petitioner had closed, two police officers, including Officer Ryan, tapped on the window, the petitioner told them to go away; that some women went out, a cab came along, the police officers said something to the women who got into the cab; that was all the petitioner knew; that the petitioner said, *"The only trouble I am having is with police officers soliciting in there:"* that he has a nice, clean restaurant, serving, during the day, many post-office employees; that he said, "If stuff like this is going on, I am really surprised;" that this is his first business venture; that he had worked for the New York Telephone Company and is now retired on a pension.

A statement directed to the respondent, certifying that the undersigned employees of the U. S. Post Office at Buffalo, New York, and being patrons of the petitioner's restaurant and bar have always found it neat and orderly and never observed any improper activities of any kind, was filed with the respondent and signed by 53 persons, each stating his or her address.

On June 13, 1962, the petitioner's license was cancelled and the full bond claimed by respondent.

On July 10, 1962, a reconsideration was denied by the respondent.

Although this was the petitioner's first offense, he was not warned or notified by the respondent to supervise his premises more carefully to avoid the alleged acts.

That from June 14, 1962, the date of actual cancellation and surrender of the license, to July 20, 1962, when the court granted a 30-day stay, the petitioner was suspended for 37 days, losing about $1,000 in profits.

Section 106 of the Alcoholic Beverage Control Law, entitled, "Provisions governing licensees to sell at retail for consumption on the premises," provides, in part: "6. No person licensed to sell alcoholic beverages shall suffer or permit any gambling on the licensed premises, or suffer or permit such premises to become disorderly. * * * 15. All retail licensed premises shall be subject to inspection by any peace officer * * * during the hours when the said premises are open for the transaction of business."

Section 40 of the Civil Rights Law, entitled, "Equal rights in places of public accommodation, resort or amusement," provides, in part: "All persons within the jurisdiction of this state shall be entitled to the full and equal accommodations, advantages, facilities and privileges of any places of public accommodations, resort or amusement, subject only to the conditions and limitations established by law and applicable alike to all persons."

These statutes are penal in character, *mala prohibita,* and so, strictly construed. Every person is entitled to an unequivocal warning before his conduct, not *malum in se,* can result in loss of liberty or property. (*People* v. *Phyfe,* 136 N. Y. 554, 559. Approved: *People* v. *Shifrin,* 301 N. Y. 445, 447.) A penal statute shall state clearly what act is forbidden, so that all who read it may know what is forbidden. (*People* v. *Stoll,* 242 N. Y. 453, 463. See, also, *Burks* v. *Bosso,* 180 N. Y. 341, 344; *People* v. *Shakun,* 251 N. Y. 107, 113.)

Although a liquor license is referred to as a privilege and not a right, when it has been issued and acted upon by the licensee it should not be revoked or suspended except on competent proof showing a clear violation of the statute involved. (*Matter of Standard Food Prods. Corp.* v. *O'Connell,* 296 N. Y. 52, 56.) Before the licensee can be punished, his violation should be proven to be a conscious one (*People ex rel. Reardon* v. *Partridge,* 86 App. Div. 310, 313) not a technical one without intent to do wrong (*People ex rel. Gannon* v. *McAdoo,* 117 App. Div. 438, 445; see, also, *People ex rel. Brennan* v. *Bingham,* 130 App. Div. 710, 715).

The liquor licensee is not an insurer of the character of his customers and he has no authority affirmatively to eject suspicious looking persons without risking possible violation of sections 40 and 41 of the Civil Rights Law, subjecting himself to both civil and criminal prosecution if there was in fact no obvious disorder. (*Matter of Stanwood United* v. *O'Connell,* 283 App. Div. 79, affd. 306 N. Y. 749.)

The respondent must make findings sufficient to inform the court and parties as to what findings were made and their basis, so that the court and parties may know if the findings are supported by competent, reliable evidence. (*Matter of Jackson* v. *Rohan,* 1 A D 2d 89, 91–92.) This evidence must be "substantial" (*Matter of Dell'Aquila* v. *Rohan,* 1 A D 2d 785) and not "too insubstantial". (*Matter of Conservative Grouping Corp.* v. *Epstein,* 10 N Y 2d 956, 957.) The permission of immoral acts upon the licensed premises implies knowledge or the opportunity through reasonable diligence to acquire knowledge, and also, a

fair measure of continuity and permanence. (*Matter of Migliaccio* v. *O'Connell*, 307 N. Y. 566, 568.) This knowledge of the licensee must be something more than " suspicion." Where the alleged immoral acts consist of solicitations by a female of a police officer during a conversation not heard by or within the hearing of the bartender or anyone else present, it is insufficient to constitute a finding of disorder. (*Matter of Mur-Art-Sol* v. *State Liq. Auth.*, 6 A D 2d 683.) There should be sufficient " common-law proof " to support the Authority's findings of disorderliness. (*Matter of Tropical Bar & Grill* v. *O'Connell*, 270 App. Div. 865.)

Where the liquor licensee enters a plea of " No contest " to a charge of maintaining disorderly premises, a suspension for a first offense of 5 days (*Matter of Katz' Delicatessen* v. *O'Connell* 302 N. Y. 286, 288) to a possible 60 days (*Matter of Melon* v. *Epstein*, 13 A D 2d 763) is reasonable. A suspension of a liquor license for a first offense of disorderliness, without a prior warning, is excessive and an abuse of discretion. (*Matter of Vedes Restaurant* v. *State Liq. Auth.*, 8 A D 2d 278, 280.) This court has the power to annul an improper suspension or order a lesser discipline without remitting the case to the Authority therefor. (Civ. Prac. Act, § 1296, subd. 5-a; *Matter of Mitthauer* v. *Patterson*, 8 N Y 2d 37, 42.)

In this case, the licensee was offered " a lesser penalty " if he pleaded " No contest; " he accepted the offer, in good faith, appearing before the pleading officer without a lawyer. The findings of fact of the pleading officer are conclusions without any factual foundation. These findings do not contain any fact showing that the licensee knew, or should have known, about any immoral solicitations. The most that can be said about the licensee's knowledge is that one police officer on one occasion " determined that the bartender knew of the immoral activities of the female." The pleading officer did not find this fact himself in behalf of the respondent. How the police officer " determined " this is not shown. The petitioner's statement was not rebutted by anyone; it evinces no guilty knowledge or conscious wrongdoing.

Upon the record before this court, it appears that the police officers did the soliciting. The petitioner recognized the police officers and did not disturb their activities. He was legally bound to allow them to inspect his premises during business hours. If he prevented them from being on the premises and so prevented the alleged immoral solicitation, he would have violated subdivision 15 of section 106 of the Alcoholic Beverage Control Law. If he had ordered the females to leave the

premises without having substantial evidence to deny them the "full and equal accommodations" of his public restaurant and bar, he would have been subject to civil and criminal liability under sections 40 and 41 of the Civil Rights Law.

Subdivision 6 of section 106 is to be strictly construed; it does not define what is meant by the words "suffer or permit such premises to become disorderly." These words are being given newer, broader meanings as each case appears before the courts to interpret and construe them in the light of the facts presented for consideration. Therefore, it is fair and reasonable that where the Authority believes that licensed premises are disorderly in its opinion, without substantial evidence that the licensee knew or reasonably should have known about it, an unequivocal warning should be given to the licensee to cease and desist the sufferance or permission thereof.

When a licensee has his life's savings amounting to many thousands of dollars invested in a restaurant and bar business, that may be lost or become unprofitable to operate without a liquor license, the power to revoke or suspend that license becomes the power to destroy. Such power should be invoked with an understanding discretion commensurate with the many duties imposed upon a conscientious licensee, particularly an inexperienced restaurateur, who has retired from his life's work, to engage in business for the first time. The use of police officers in plain clothes, pretending to be "truck drivers from Pennsylvania," when the licensee recognizes them as police officers, actively participating in disorderly conduct sufficient to result in the revocation or suspension of a liquor license, to be proved solely upon the testimony of such officers, is a practice to be delimited, not encouraged. The use of "secret police" or illegal methods to obtain evidence of crime is not an approved practice in a free society. The trend in this State and Nation is otherwise. (See *Mapp* v. *Ohio*, 367 U. S. 643, 655, holding for the first time on June 19, 1961, that all evidence obtained by searches and seizures in violation of the Federal Constitution is inadmissible in a State court. In that case, the police got into the appellant's home by displaying a piece of paper and claiming it to be a search warrant.)

Of course, the police and the Authority have a grave responsibility to uphold the law and protect the public. In this the courts will readily assist when performance is proper.

Here, the record is not sufficient to establish a violation of subdivision 6 of section 106 of the Alcoholic Beverage Control Law. If it were sufficient, the 37 days' suspension and $1,000 loss of profits would be punishment enough. The suspension of

the petitioner's liquor license, without any prior warning, was excessive. (See *Matter of Theodore* v. *State Liq. Auth.*, 17 A D 2d 1035 [4th Dept.].)

Therefore, the suspension of the petitioner's liquor license is annulled. The petition is granted, without costs. The respondent will reinstate the petitioner's license and return the full amount of the bond.