■ In the Matter of SLED HILL CAFE, INC., Petitioner, v. DONALD HOSTETTER, as Chairman of the New York State Liquor Authority et al., Respondents.—STALEY, JR, J.

596

Gibson, P. J., Reynolds, Aulisi and Staley, Jr., JJ., concur in memorandum by Staley, Jr., J.; Herlihy, J., dissents and votes to annul in the following memorandum. The background of this matter is set forth in the majority opinion. The issue here is not the discretionary power of the State Liquor Authority, but rather whether or not the reason set forth by the Authority for denying the license is supported by substantial evidence in this record. (See *Matter of Restaurants & Patisseries, Longchamps* v. *O'Connell*, 271 App. Div. 684, 687, affd. 296 N. Y. 888; *Matter of Baird* v. *State Liq. Auth.*, 277 App. Div. 60; *Matter of Stork Rest.* v. *Boland*, 282 N. Y. 256, 273; *Matter of 54 Cafe & Rest.* v. *O'Connell*, 274 App. Div. 428, affd. 298 N. Y. 883.) The respondent Authority denied the license application in this case upon the following reasons: "Due to the applicant's association with known narcotic users frequenting the premises and upon consideration of all the facts, the Authority finds that the issuance of this license would create a high degree of risk in the administration and enforcement of the Alcoholic Beverage Control Law." The Authority's conclusion as to "risk" must flow from the finding that the petitioner had an association with narcotic users since no other finding is made by it. The respondent produced only one witness in this case, a Deputy Sheriff, who testified that he had been assigned to investigate the applicant's premises as part of a broad narcotics investigation in the area; that during the Summer of 1965 he had these premises under surveillance practically every week end; that one Heath, who had been convicted of possessing marijuana, was "seen in the place" and "frequented the place quite often"; that he had seen Heath with the applicant's president, Mr. Sife, "on several occasions"; that one Allen, who had been indicted for possession of marijuana, had "frequented the place quite often in the past two years"; that he had seen Allen with Sife "two or three times, maybe" that one Harris, who had been indicted for possession of marijuana, had frequented the premises "quite often, usually on weekends"; that he had seen no personal contact between Harris and Sife; and that Sife had told one O'Brien that he (Sife) had smoked marijuana. Admitted into evidence was the affidavit of one Walsh which asserted that Sife had sold marijuana on one specific occasion to certain people and that the deponent had once seen Sife smoke marijuana. At this point it is to be noted

that the hearsay statement as to what O'Brien had said and the affidavit of Walsh were both legally inadmissible at common law as evidence having probative force and were uncorroborated by any common-law evidence and, therefore, are not competent evidence of the facts asserted therein in this proceeding. (See *Matter of Magee* v. *New York State Liq. Auth.*, 13 A D 2d 649; *Matter of Stammer* v. *Board of Regents*, 287 N. Y. 359, 365; *Matter of Yates* v. *Mulrooney*, 245 App. Div. 146, 149.) The attorney for the applicant duly objected to this evidence and thus, there is no proof in this record that its president ever used or sold narcotics. (Cf. *Matter of Leogrande* v. *State Liq. Auth.*, 19 N Y 2d 418.) On cross-examination the respondent's witness admitted that Heath had only been observed going to the premises on one occasion in 1965 and actually he then only was in vacant lot next door, but that Heath had gone to the premises quite a bit in 1964. The applicant, however, introduced in evidence a letter from the Parole Commission of New York City which recites that Heath was in jail for most of 1964 and for all of the Summer season of 1964. As to Allen, a court order dismissing the indictment against him was introduced in evidence by the applicant. On the question of being narcotics users, there was nothing introduced to show that Harris and Allen were such users other than the simple statement of the respondent's witness to that effect. To sum up the evidence of "applicant's association with known narcotic users" it appears that Sife was in contact with Heath once in two years and then not on the premises and that according to Mr. Sife such contact was coincidental in that Heath was simply in company with one David Boile. As to Allen, he was on the premises once or twice in two years and Harris occasionally came to the establishment but was not seen in contact with Sife. While only a minimal of evidence is necessary to uphold the determination of the Authority, the present record consists only of speculation, surmise and hearsay. From the record it appears that narcotics has been a troublesome problem in the general locality where petitioner has its establishment. The respondent established by its witness that a suspected user had on occasions patronized the establishment but no information was furnished by him as to what went on inside the establishment except to admit that he himself had no complaints. (See *Matter of 2125 Barney's* v. *New York State Liq. Auth.*, 16 A D 2d 252, affd. 13 N Y 2d 662; *Matter of Coney-O-Tavern*, v. *New York State Liq. Auth.*, 25 A D 2d 549; see, also, *Matter of Stanwood United* v. *O'Connell*, 283 App. Div. 79, 82, affd. 306 N. Y. 749.) No governmental agency should be able to deny the privilege to conduct a business on such grossly inadequate proof as was utilized in this proceeding. If, after what appears to be an extensive investigation in Ulster County as to narcotic traffic, the evidence produced here is the best available, it is understandable why the indictment against Allen was dismissed. Surmise, speculation and hearsay do not constitute a reasonable basis for the determination in the present record and must be deemed arbitrary and capricious. (See *Matter of Toyos* v. *Bruckman*, 266 App. Div. 28, mot. for lv. to app. den. 266 App. Div. 885, app. dismd. 291 N. Y. 745; *Matter of Stanwood United* v. *O'Connell, supra.*) The determination should be annulled and the matter remitted to the respondent Authority for the issuance of the license.